## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-335-LPS-CJB |
| ) | |
| UBISOFT ENTERTAINMENT SA and ) | |
| UBISOFT INC., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Presently pending in this patent infringement case is Defendants Ubisoft Entertainment

SA ("Ubisoft SA") and Ubisoft Inc.'s ("Ubisoft Inc.") (collectively, "Defendants") partial motion

to dismiss Plaintiff Princeton Digital Image Corp.'s ("Plaintiff" or "PDIC") claims for indirect

and willful infringement, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (the

"Motion"). (D.I. 76)  For the reasons set forth below, the Court recommends that Defendants'

Motion be GRANTED.

### I.     BACKGROUND

#### A.     The Parties

Plaintiff PDIC is a Texas corporation. (D.I. 72 at ¶ 1)  PDIC is the owner, by assignment,

of the patent-in-suit, United States Patent No. 5,513,129 (the "'129 patent").  (*Id.* at ¶ 9)

Defendant Ubisoft SA is a French corporation with its principal place of business in

Montreuil-sous-Bois, France.  (*Id.* at ¶ 2)  Ubisoft SA (1) develops electronic video games,

including *Just Dance*; (2) publishes electronic video games, including *Just Dance* and *Rocksmith*;

(3) develops downloadable content such as playable song tracks for use with electronic video

games, including *Just Dance*; and (4) publishes and distributes downloadable content such as

playable song tracks for use with electronic video games including *Just Dance* and *Rocksmith*. (*Id.* at ¶¶ 27-28)

Defendant Ubisoft Inc. is a California corporation with its principal place of business in San Francisco, California. (*Id.* at ¶ 3) Ubisoft Inc. (1) develops electronic video games including *Rocksmith*; (2) publishes and distributes electronic video games including *Just Dance* and *Rocksmith*; (3) develops and distributes peripheral devices (such as cables for connecting a computer or gaming console to a guitar, so that the guitar can be used as a game controller for use with electronic video games, including *Rocksmith*); and (4) develops, publishes and distributes downloadable content such as playable song tracks for use with electronic video games including *Just Dance* and *Rocksmith*. (*Id.* at ¶¶ 29-31) Ubisoft Inc. is Ubisoft SA's United States distribution subsidiary. (*Id.* at ¶¶ 3, 30)

**B.    Procedural Background**

On February 27, 2013, PDIC commenced this action against Defendant Ubisoft SA, asserting that Ubisoft SA infringed one or more claims of the '129 patent. (D.I. 1) The '129 patent was filed on July 14, 1993, and it issued on April 30, 1996. (*Id.*, ex. 1)[1] The patent is entitled "Method and System for Controlling Computer-Generated Virtual Environment in Response to Audio Signals," and it relates generally to "[a] method and apparatus for the control and manipulation of a virtual environment . . . in response to a music signal." ('129 patent, Abstract)

In its original Complaint, PDIC alleged that Ubisoft SA is the developer, distributor

---

[1]    The '129 patent appears on the docket in this action more than once, including as Exhibit 1 to D.I. 1. Further citations will simply be to the '129 patent.

and/or publisher of games "that allow the control of a virtual environment in response to a music signal," including certain *Just Dance* video games, and that Ubisoft SA has directly infringed the '129 patent under 35 U.S.C. § 271(a), "through its developing, making, using, offering for sale and/or selling of at least" the *Just Dance* games. (D.I. 1 at ¶¶ 9-10) Beyond that, PDIC noted in the original Complaint its belief that "discovery may reveal" that Ubisoft SA further directly infringes the '129 patent by developing, making, using, offering for sale, and/or selling other video games, including at least *Rocksmith*. (*Id.* at ¶ 10) PDIC also alleged in the original Complaint that "[i]t is anticipated that discovery may reveal . . . that other activities of Ubisoft [SA] may contribute to or induce infringement of" the '129 patent. (*Id.* at ¶ 11)

On April 16, 2013, PDIC served Ubisoft SA with the original Complaint. (D.I. 77 at 1)[2] In lieu of filing an answer, on May 7, 2013, Ubisoft SA moved to dismiss PDIC's "speculative" allegations with respect to possible (1) direct infringement regarding *Rocksmith* and (2) indirect infringement. (*See* D.I. 5 at 2) Thereafter, PDIC filed a First Amended Complaint ("FAC") on May 30, 2013 that dropped these allegations entirely, leaving as the sole claim in the case PDIC's direct infringement claim against Ubisoft SA, which specifically listed only the *Just Dance* games as accused products. (D.I. 8 at ¶¶ 8-11)

Ubisoft SA filed an Answer on June 13, 2013. (D.I. 9) The '129 patent expired one month later, on July 14, 2013. (*See* '129 patent at 1 (noting a patent application filing date of July 14, 1993); *see also* D.I. 77 at 1) Shortly thereafter, on July 17, 2013, Chief Judge Leonard

---

[2]        Defendants recite this fact regarding service in their brief, (D.I. 77 at 1), without citing to anything on the record in support. PDIC acknowledges this date in its responsive brief and does not dispute it, (D.I. 79 at 8-9), and so the Court will consider this fact to be undisputed herein.

P. Stark referred this case to the Court to hear and resolve all pretrial matters, up to and including the resolution of case-dispositive motions. (D.I. 10)

On September 16, 2013, one month after the Court had entered a Scheduling Order in the case, (D.I. 15), PDIC filed a Second Amended Complaint ("SAC"), (D.I. 21). PDIC's SAC included a new allegation that Ubisoft SA infringed one or more method claims of the '129 patent under 35 U.S.C. § 271(g) "by importing into the United States products" such as the accused *Just Dance* games. (*Id.* at ¶ 11) In lieu of filing an answer, Ubisoft SA moved to dismiss PDIC's claim for infringement under Section 271(g). (D.I. 27)[3]

In December 2013, PDIC filed a motion for leave to file a Third Amended Complaint. (D.I. 46) With that motion, PDIC explained that it sought to "add an additional Ubisoft entity, Ubisoft [Inc.], as a defendant [because that entity] . . . may be responsible for another of the accused games, *Rocksmith*, as well as to assert direct infringement claims under Section 271(a) for those games already at issue (e.g.[,] *Just Dance*) against" Ubisoft Inc. (D.I. 47 at 2)

Before the case progressed further, on January 15, 2014, the Court imposed a stay of the case pending resolution of three *inter partes* review ("IPR") proceedings with respect to the '129 patent. (D.I. 52; D.I. 70 at ¶ 1) Those proceedings concluded by January 2016, and they resulted in the invalidation of all 20 independent claims of the '129 patent, leaving 3 dependent claims of

---

[3]    Shortly thereafter, PDIC served its Preliminary Infringement Contentions, (D.I. 37), prompting a challenge by Ubisoft SA that those contentions were deficient because, *inter alia*, (1) they provided Ubisoft SA with "no notice of [PDIC's] infringement theory[;]" and (2) they re-inserted the *Rocksmith* game back into the case, (D.I. 39 at 3-4). The Court thereafter required PDIC to produce supplemental Preliminary Infringement Contentions that provided more detailed infringement allegations for the accused games, but not for *Rocksmith*. (D.I. 43)

the patent (claims 14, 19 and 20) still valid.  (*See* D.I. 67)[4]  The Court lifted the stay of this case

on January 21, 2016.

On March 4, 2016, PDIC filed its Third Amended Complaint, (D.I. 72 (hereinafter,

"TAC")), which is the subject of the instant Motion.  The TAC differs from PDIC's prior

complaints in a number of ways.  First, the TAC adds Ubisoft Inc. (Ubisoft SA's United States

distribution subsidiary) as a new Defendant.  (*See id.* at 1)  Second, the TAC alleges direct

infringement against Ubisoft Inc. only.  (*Id.* at ¶ 32)  Third, the TAC does not include any claim

of infringement under Section 271(g), but does add claims against both Ubisoft Defendants for

induced infringement and willful infringement, (*id.* at ¶¶ 33, 75-76), and against Ubisoft Inc. for

contributory infringement, (*id.* at ¶ 34).  Fourth, the TAC's infringement allegations are directed

to both the "*Just Dance* and *Rocksmith* electronic video games."  (*Id.* at ¶¶ 33-34, 75-76)[5]  Fifth,

PDIC's infringement claims in the TAC are limited to dependent claims 14, 19 and 20 of the '129

patent.  (*Id.*)

Defendants filed the instant Motion, in lieu of an Answer, on April 1, 2016.  (D.I. 76)

Briefing on the Motion was completed on April 28, 2016.  (D.I. 80)

## II.   STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil

Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is

---

[4]      The United States Patent and Trademark Office's Patent Trial and Appeal Board
had declined to institute review on dependent claims 14, 19 and 20 of the '129 patent.  (D.I. 67)

[5]      PDIC's direct infringement allegations with respect to the *Just Dance* video
games, which were developed by Ubisoft SA outside of the United States, (*see, e.g.*, TAC at ¶¶ 2,
26), are limited to Ubisoft Inc.'s "testing and otherwise using" the games, (*id.* at ¶ 32).

5

entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11 (citation omitted). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

## III.   DISCUSSION

With their Motion, Defendants challenge the adequacy of PDIC's claims of indirect infringement (that is, its claims for induced infringement and contributory infringement) and PDIC's claims of willful infringement. (D.I. 77; D.I. 80)[6] The Court will first address the allegations as to indirect infringement, and then will address the willful infringement claim.

---

[6]     As noted above, the TAC also alleges direct infringement by Ubisoft Inc. (D.I. 72 at ¶ 32) In their Motion, Defendants do not challenge the sufficiency of this direct infringement allegation, (*see, e.g.*, D.I. 77 at 1), and so the Court's decision here addresses only the claims of induced, contributory and willful infringement.

## A.    Indirect Infringement

### 1.    Elements of Indirect Infringement Claims

In the TAC, PDIC alleges induced infringement against both Defendants, and
contributory infringement against Ubisoft Inc.  As to a claim for induced infringement, 35 U.S.C.
§ 271(b) states that "[w]hoever actively induces infringement of a patent shall be liable as an
infringer."  In order to prove induced infringement, the patentee "must show direct infringement,
and that the alleged infringer knowingly induced infringement and possessed specific intent to
encourage another's infringement."  *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed.
Cir. 2012) (internal quotation marks and citations omitted); *Symantec Corp. v. Comput. Assocs.
Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008) ("Thus, 'inducement requires evidence of
culpable conduct, *directed to encouraging* another's infringement, not merely that the inducer
had knowledge of the direct infringer's activities.'") (emphasis added) (citation omitted).  With
regard to contributory infringement, under 35 U.S.C. § 271(c) a patentee must demonstrate that
the alleged contributory infringer has sold, offered to sell or imported into the United States "a
component of a patented machine, manufacture, combination or composition, or a material or
apparatus for use in practicing a patented process . . . knowing the same to be especially made or
especially adapted for use in an infringement of such patent, and not a staple article or
commodity of commerce suitable for substantial noninfringing use[.]"  *See also Lucent Techs.,
Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009).

Claims for both induced infringement and contributory infringement require, *inter alia*,
"knowledge of the existence of the patent that is [allegedly] infringed" as well as "knowledge
that the acts [at issue] constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*,

7

563 U.S. 754, 765-66 (2011); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920,

1926 (2015) ("Like induced infringement, contributory infringement requires knowledge of the

patent in suit and knowledge of patent infringement."). At the pleading stage, a plaintiff need

only allege facts allowing the reasonable inference that the defendant had knowledge of the

patent-in-suit in the key time period, and that its products infringed that patent. *See MONEC*

*Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012).

## 2.    Defendants' Arguments

In their Motion, Defendants attack the sufficiency of PDIC's indirect infringement claims

as they relate to both pre-complaint and post-complaint conduct. With respect to PDIC's claims

directed to pre-complaint indirect infringement, Defendants' main argument is that the TAC fails

to sufficiently allege that Defendants had actual knowledge of the '129 patent before this lawsuit

commenced. With respect to PDIC's claim directed to post-complaint indirect infringement (a

claim encompassing the roughly three-month time period between service of the original

Complaint and expiration of the '129 patent), Defendants primarily assert that the original

Complaint did not put them on notice of PDIC's current infringement allegations, and therefore

the "knowledge of patent infringement" element cannot be plausibly alleged. The Court will take

up these arguments in turn.

### a.    Pre-complaint indirect infringement

Defendants assert that PDIC has not alleged sufficient facts to support a plausible claim

that Defendants actually knew of the '129 patent prior to the instant lawsuit. (D.I. 77 at 9-10; D.I.

80 at 3-5) To that end, as Defendants point out, the TAC does not allege that Defendants were in

possession of the '129 patent, or that Defendants had ever cited to the '129 patent, or that

8

Defendants had ever cited to a patent in the '129 patent family. (D.I. 77 at 5, 9; D.I. 80 at 3) Nor does the TAC allege that PDIC (or any other prior owner of the '129 patent) ever notified Defendants about the existence of the '129 patent, prior to the commencement of this lawsuit. (D.I. 77 at 5, 9; D.I. 80 at 3) Instead, Defendants assert that the TAC's allegations with respect to Defendants' pre-suit knowledge of the '129 patent amount to "what is, at best, a 'second-degree' connection to the '129 patent." (D.I. 80 at 4)

Below, the Court will first provide more detail about the TAC's allegations and then will assess whether the allegations suffice to allege pre-suit knowledge of the '129 patent.

### (1)    TAC's allegations

The TAC alleges that in March 2009, Ubisoft SA acquired an unreleased electronic video game (then known as *Guitar Rising*), as well as the intellectual property and patent applications related to the game, all from a company called GameTank, Inc. ("GameTank"). (TAC at ¶ 63) This intellectual property portfolio included U.S. Patent Application No. 11/865,681 (entitled "Instrument Game System and Method") (the "'681 application"); the '681 application was filed in October 2007, and was formally assigned to Ubisoft SA in June 2010. (*Id.*) The inventor named in the '681 application is Jacob Parks, who was Game Tank's Chief Executive Officer and co-founder. (*Id.* at ¶ 64) In April 2009, Mr. Parks became employed by Ubisoft Inc. as a software engineer assigned to the team responsible for launching the newly acquired video game. (*Id.*) Ubisoft Inc. continued to develop the game, and ultimately published it in the United States under a new name, *Rocksmith*, in the fall of 2011. (*Id.* at ¶¶ 64, 70)

Meanwhile, Ubisoft SA had continued to prosecute the '681 application, engaging patent

9

attorney Timothy Lohse to represent it and Mr. Parks in those prosecution efforts. (*Id.* at ¶ 65)[7]
Mr. Lohse also represented Mr. Parks and Ubisoft SA in the prosecutions of other subsequently-
filed U.S. patent applications relating to video games. (*Id.*)

In June 2009, Mr. Lohse submitted prior art during prosecution of the '681 application
"that both Mr. Parks and Ubisoft SA were aware of[,]" including United States Patent No.
5,990,405 ("the Gibson '405 patent"). (*Id.* at ¶ 67) The Gibson '405 patent, filed on July 8, 1998
and granted on November 23, 1999, is assigned to Gibson Guitar Corp. ("Gibson"). (*Id.*; *see
also* D.I. 80, ex. A)[8] The patent is entitled "System and Method for Generating and Controlling a
Simulated Musical Concert Experience[,]" and the invention claimed therein "relates generally to
audio and video simulations of a pre-recorded musical performance." (Gibson '405 patent, col.
1:6-7) The "Background of the Invention" section of the Gibson '405 patent describes prior art
virtual reality systems, and it references the '129 patent as disclosing a type of "virtual reality
system[] [that has] been used to create and control a virtual world that responds to music signals
or to pre-recorded control tracks corresponding to music signals." (Gibson '405 patent, col. 1:13-
36; *see also* TAC at ¶¶ 67-68) The specification of the Gibson '405 patent next states that the
'129 patent:

---

[7]     Mr. Lohse had previously represented GameTank in the prosecution of the '681
application before Ubisoft SA acquired Game Tank. (D.I. 72 at ¶ 65)

[8]     To the extent information set out here with regard to the Gibson '405 patent is not
contained in the TAC itself, it comes directly from that patent, which was attached to
Defendants' Reply Brief in support of their Motion. (D.I. 80, ex. A) The Court can consider the
content of the Gibson '405 patent in resolving the Motion because that patent is expressly
referred to in the TAC, and is integral to PDIC's allegations. *See In re Burlington Coat Factory
Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Further citations to the patent itself will simply
be to the "Gibson '405 patent."

> [D]escribes a virtual reality in which a music source is connected
> to an electronic interface and to a virtual reality processor. The
> system is further controlled by one or more input devices, such as a
> head tracker and manipulator glove. The pre-recorded music,
> along with an optional pre-recorded control track, controls and
> manipulates objects within the virtual environment such that the
> music effectively drives the display of an animated graphical scene.

(Gibson '405 patent, col. 1:37-44; *see also* TAC at ¶ 68) Finally, the Gibson '405 patent

specification notes that the system described in the '129 patent "does not provide a simple and

effective method for allowing a musician to participate in and control a 'virtual environment'

through the actual operation of a musical instrument, such as an electric guitar. . . . [and that

s]uch a system is lacking in the prior art." (Gibson '405 patent, col. 1:45-60)[9] PDIC's TAC

alleges that both Defendants "knew, as a result of Ubisoft Inc.'s employment of Mr. Parks, and

Ubisoft SA's engagement of Mr. Lohse as its patent attorney, that the '129 patent described" the

above-referenced virtual reality system, and that "computer and gaming console systems on

which the *Rocksmith* game would be played would infringe the '129 patent." (TAC at ¶ 69)

The TAC further alleges that in June 2011, Ubisoft SA entered into a distribution

agreement and partnership with Gibson (the owner of the Gibson '405 patent) to promote and

authorize Ubisoft Inc.'s sale of Gibson guitars with Ubisoft's *Rocksmith* game and its

*Rocksmith* Real Tone Cable™.[10] (*Id.* at ¶ 70) Pursuant to this partnership, when the

*Rocksmith* game was released in the fall of 2011, Gibson Epiphone guitars were bundled together

and sold in a package with the *Rocksmith* Real Tone Cable and the *Rocksmith* game. (*Id.*) The

---

[9]     This portion of the Gibson '405 patent is not specifically referenced in the TAC.

[10]     The *Rocksmith* Real Tone Cable was developed by Ubisoft Inc. to connect electric
guitars to a computer or gaming console system and control the "'virtual environment'" produced
by the *Rocksmith* electronic video game. (TAC at ¶ 70)

11

TAC alleges that after Ubisoft SA and Gibson entered into this partnership, Mr. Lohse continued

to represent Mr. Parks and Ubisoft SA in the prosecution of Ubisoft SA's patent applications,

"and continued to submit the Gibson '405 patent . . . as relevant prior art on multiple occasions in

2011 and 2012 during the prosecution of Ubisoft SA patent applications." (*Id.*)

### (2)    Analysis

PDIC argues that its TAC satisfies the "knowledge of the patent" element of indirect

infringement "because it pleads facts showing Ubisoft's knowledge of the Gibson ['405] patent

describing the '129 patent and its subject matter, and in particular its patent attorney's repeated

citation to the Gibson patent as being relevant to Ubisoft's video game patent applications."

(D.I. 79 at 6)  In other words, according to PDIC's theory, "Ubisoft and its employees and

attorneys had actual knowledge of the '129 patent because they reviewed the description of the

'129 patent in the Gibson ['405] patent." (*Id.* at 6 n.5)

When the TAC's allegations as to this issue are stripped down to the well-pleaded facts

therein, what they show is that: (1) Ubisoft SA acquired the '681 application (along with some

unknown amount of other intellectual property and patent applications) in March 2009; (2)

Ubisoft Inc. hired the named inventor of that application the following month; (3) during

prosecution of the '681 application in June 2009, Mr. Lohse "submitted prior art [and] . . . . [o]ne

of those patents" was the Gibson '405 patent; and (4) the Gibson '405 patent specification

includes half a paragraph (amounting to 14 lines) about the '129 patent. (Gibson '405 patent, col.

1:36-49)[11]  These allegations put two degrees of separation between Defendants and the '129

---

[11]    As noted above, the TAC also alleges that Defendants "were . . . aware of the '129
patent, and of their infringement of the patent" in June 2011, when Ubisoft SA partnered with
Gibson to bundle Gibson's guitars with the *Rocksmith* games and related *Rocksmith* products.

patent, as the theory of knowledge is not that Defendants *cited directly to* the '129 patent as prior

art, but rather that Defendants *cited to another patent (unrelated to the '129 patent) that itself*

*made reference to* the '129 patent.

 The Court concludes that, without more, such a theory is too tenuous to permit the

reasonable inference that Defendants had actual knowledge of the '129 patent.[12] As Defendants

note, were the Court to find PDIC's allegations as to pre-suit knowledge of the patent to be

sufficient, that would in essence mean that, for purposes of indirect infringement, an accused

infringer would be tagged with knowledge not only of "every patent i[t] has ever cited during

prosecution of any patent" application, but also of "every patent that those patents cite or

---

(TAC at ¶ 70; *see also id.* at ¶ 71 (alleging that Defendants knew what the '129 patent claimed as a result of, *inter alia*, the Ubisoft SA-Gibson partnership)) The Court notes that PDIC's responsive brief does not mention this additional allegation in its (very short) section discussing the "knowledge of the patent" element of its indirect infringement claims. (D.I. 79 at 5-7) And to the extent that this allegation in the TAC is intended to further establish Defendants' pre-suit knowledge of the '129 patent, the Court cannot make such an inference in the absence of any pleaded facts illuminating how either the '129 patent or the Gibson '405 patent would be relevant to the Ubisoft SA-Gibson *Rocksmith* partnership. (*See* D.I. 77 at 10 ("Princeton's assumption that [Defendants] would have known of the '129 patent simply from interacting with Gibson—a third party—is far too tenuous to plausibly allege actual knowledge of the '129 patent"))

[12]  In addition to the facts alleged with respect to the '681 application, PDIC more vaguely alleges in the TAC that Mr. Lohse "continued to submit the Gibson '405 patent with its reference to and detailed description of the features of the virtual reality computer systems described and claimed in PDIC's '129 patent as relevant prior art on multiple occasions in 2011 and 2012 during the prosecution of Ubisoft SA patent applications." (TAC at ¶ 70) This allegation could be meant to suggest that Ubisoft SA cited to the Gibson '405 patent as prior art in prosecuting multiple additional patent applications. But that is not entirely clear, and the '681 application is the only Ubisoft SA patent application that is specifically referenced in the TAC. The connection between Ubisoft SA and the '129 patent might seem somewhat less attenuated if, for example, Mr. Lohse prosecuted numerous applications during this timeframe on behalf of Ubisoft SA, and if he cited to the Gibson '405 patent in a large number of those applications. But as it stands now, the allegation is too threadbare to allow the Court to make such an inference. Thus, this allegation does not have a meaningful impact on the outcome of the pre-suit knowledge issue.

13

discuss." (D.I. 77 at 10 n.2; *see also* D.I. 80 at 4) While the '681 application itself is not part of

the record here, Defendants represent that more than 50 patents, publications and systems were

cited during the prosecution of that application. (D.I. 80 at 4) PDIC's theory, as it has expressed

it, would essentially hold Defendants responsible for not only knowledge of all of those 50+ cited

references, but also of the innumerable amount of references cited in each of those 50+

references.[13] It simply is not reasonable to infer—again, without more—that Defendants would

have had actual knowledge of the entirety of such a broad a span of art during the prosecution of

the '681 application and/or thereafter. This could not be what the Supreme Court of the United

States intended when it repeatedly affirmed that induced infringement and contributory

infringement claims require, *inter alia*, "knowledge" of the existence of the patent that is

purportedly being infringed. *See, e.g.*, *Commil USA, LLC.*, 135 S. Ct. at 1926; *Global-Tech*

*Appliances, Inc.*, 563 U.S. at 765; *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S.

476, 488 (1964).[14]

---

[13]     By way of example, the Gibson '405 patent itself lists 18 patents as "References
Cited[,]" and the Ex Parte Reexamination Certificate issued on December 1, 2009 with respect to
that patent lists an additional five patents and three other publications. (D.I. 80, ex. A)

[14]     In fairness to PDIC, it is true that the Gibson '405 patent does not merely *list* the
'129 patent as a reference, but additionally goes on to describe it in half a paragraph. And yet this
fact alone cannot be enough to render plausible Defendants' knowledge of the '129 patent. It is
not uncommon for a patent specification to reference other patents or pieces of prior art in some
detail—the '129 patent specification, for example, devotes two paragraphs to two prior art
patents, and also provides high-level descriptions of other prior art systems. ('129 patent, cols.
3:6-4:24) If it was enough for the above-referenced description in the Gibson '405 patent to
allow the inference that Defendants had knowledge of the '129 patent, that would effectively hold
them accountable for, at minimum, all cited references in the '681 application as well as any
references that were at all described in those 50+ references. This would still amount to an
incredibly broad span of references that are asserted to have been on Defendants' radar screen at
the relevant time. Without more alleged as to why a defendant would have knowledge of
particular references that are described in a defendant's cited prior art, this theory stretches the

In its responsive brief, PDIC cites to several cases that supposedly support its theory (i.e.,
that when a defendant cites to a patent, which in turn cites to and describes the relevant patent at
issue, this is sufficient to make out the "knowledge of the patent" element of indirect
infringement). But in the Court's view, each of these cases are distinguishable. In fact, the cases
actually help reinforce the insufficiency of PDIC's allegations.

A representative example of this can be seen in PDIC's reliance on *Elm 3DS Innovations,
LLC v. Samsung Elecs. Co., Ltd.*, Civil Action No. 14-1430-LPS-CJB, 2015 WL 5725768 (D.
Del. Sept. 29, 2015). (D.I. 79 at 6 & n.5) In *Elm 3DS Innovations*, the Court found that the
plaintiff had alleged sufficient facts demonstrating the defendants' pre-suit knowledge of the
asserted patent, where the complaint's allegations established that: (1) the patent's inventor sent
a copy of the asserted patent's parent patent to the defendants, and then made an in-person
presentation to defendants regarding the parent patent; (2) thereafter, in prosecuting a number of
their own patents, the defendants also cited to four patents that were related to the asserted
patent, all of which shared the same specification as the asserted patent; and (3) the asserted
patent "was well-known in the ['tight knit'] semiconductor industry and was frequently cited by
other of [d]efendants' competitors in that industry." *Elm 3DS Innovations*, 2015 WL 5725768, at
*2-3. The Court explained that while the plaintiff's allegations regarding (1) on the one hand,
the defendants' knowledge of patents in the same family as the asserted patent and (2) on the
other, the asserted patent's ubiquity in the defendants' tight-knit industry, "[i]n and of themselves
. . . *may not have been sufficient*" to satisfy the knowledge element, when "considered as a
whole," they rendered pre-suit knowledge of the asserted patent at least plausible. *Id.* at *3

"knowledge of the patent" element too thin.

15

(emphasis added).

In the Court's view, the TAC's allegations stand in real contrast to those in *Elm 3DS Innovations*. Here, for one, PDIC's TAC does not contain any factual allegations suggesting that the '129 patent (or the Gibson '405 patent, for that matter) is well-known in the relevant industry. (*See* D.I. 80 at 5 n.5)[15] But set those allegations in *Elm 3DS Innovations* aside. Even if one did so, and simply compared the remaining relevant allegations in *Elm 3DS Innovations* to those at issue here, the allegations in the TAC would still be wanting in comparison. (*Id.* at 4-5) In *Elm 3DS Innovations*, after all, the defendants "had some fairly detailed, specific discussions" about and had cited to several patents in the same patent family as the asserted patent. *Elm 3DS Innovations*, 2015 WL 5725768, at *3. That is, the defendants there had a demonstrated familiarity, over a number of years, with patents that shared the same specification as the asserted patent. *Id.*; *see also* (D.I. 80 at 4). Here, in contrast, Ubisoft SA is not alleged to have directly cited to the '129 patent, nor to any member of that patent's family, when prosecuting the '681 application. The record simply does not indicate that Defendants had any real level of engagement with the particular subject matter that provides the background for the patent in question, as contrasted with the defendants in *Elm 3DS Innovations*.[16]

---

[15] PDIC also cites to *Investpic LLC v. Factset Research Sys., Inc.*, Civ. No. 10-1028-SLR, 2011 WL 4591078 (D. Del. Sept. 30, 2011) as supporting the sufficiency of its "knowledge of the patent" allegations. (D.I. 79 at 6) But *Investpic* is also inapposite. There it was important that the plaintiff had alleged, *inter alia*, that the asserted patent "'is well-known in the industry—having been cited by at least 79 issued U.S. patents since 2001.'" *Investpic LLC*, 2011 WL 4591078, at *2. Here again, there are no similar allegations as to the '129 patent.

[16] The Court further notes that some of PDIC's other cited cases are readily distinguishable because, in those cases, the complaints at issue contained allegations that the defendants had *directly* cited to the asserted patent (or to the patent application that lead to the issuance of the asserted patent). *See Potter Voice Techs, LLC v. Apple Inc.*, 24 F. Supp. 3d 882,

The Court's conclusion might have been different here were, for example, there other

facts alleged indicating that in prosecuting the '681 application, Ubisoft SA would have

necessarily engaged with the Examiner regarding the '129 patent and its contents. But there is no

indication to that effect in the TAC, nor indeed, even an allegation that Ubisoft SA's citation to

the Gibson '405 patent was ever noted by the Examiner, or was ever further discussed during that

---

886-87 (N.D. Cal. 2014) (holding that the complaint adequately pleaded the defendant's
knowledge of the asserted patent where defendant acquired certain employees who had, several
years earlier, cited to the asserted patent in the course of prosecuting patents that named them as
inventors) (*cited in* D.I. 79 at 7 n.6); *Mallinckrodt Inc. v. E-Z-EM Inc.*, 671 F. Supp. 2d 563, 569
(D. Del. 2009) (finding the "knowledge of the patent" element sufficiently pleaded where the
defendant had filed a Disclosure Statement with the United States Patent Office that identified
certain prior art, including the application that resulted in the issuance of the asserted patent)
(*cited in* D.I. 79 at 7). At least in cases like those, representatives of the defendant had the patent
at issue sufficiently front of mind, such that they could be said to be making some type of
affirmative statement *about that patent*—an assertion, however brief, that the existence of that
patent was relevant to an assessment of their own patent application.

But it is worth nothing that our Court has found that even allegations like these may not
be sufficient to demonstrate knowledge of a patent, depending on the specific facts alleged. *See,
e.g.*, *DermaFocus LLC v. Ulthera, Inc.*, — F. Supp. 3d —, Civ. No. 15-654-SLR, 2016 WL
4263122, at *1, *4 (D. Del. Aug. 11, 2016) (finding that the allegations did not permit the
plausible inference that the defendant had pre-suit knowledge of the asserted patent, where the
defendant's founder was one of two named inventors and one of two patent applicants on an
application for which an Information Disclosure Statement was filed in 2005; while the
Information Disclosure Statement listed seven "'material references' for determining
patentability[,]" including the asserted patent, there was "no indication . . . that the [asserted]
patent was mentioned again during prosecution of the [] application or otherwise by defendant
before the instant litigation was filed" in 2015) (footnote omitted); *cf. Chalumeau Power Sys.
LLC v. Alcatel-Lucent*, Civil Action No. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July
18, 2012) (finding that the defendant's pre-suit knowledge of the patent was not sufficiently
alleged where the complaint stated that "twice in 2003, and once in 2004, in relation to three
patent applications assigned to [one of the defendants], a patent examiner asserted that the
[asserted] patent was prior art[,]" because "[t]he connection between the moving defendants and
the patent applications from nearly a decade ago are not explained sufficiently to make plausible
that either of the defendants had actual knowledge"). Cases like these help demonstrate that
these inquiries are fact-specific and case-specific—and that the inquiry is not solely about
whether the defendant ever had *some connection to* the patent at issue, but whether the defendant
can be fairly said to have *knowledge of* the patent.

prosecution.

For all of the reasons set out above, the Court concludes that PDIC has failed to sufficiently allege Defendants' pre-suit knowledge of the '129 patent. *See, e.g., EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 532-33 (D. Del. 2011) (finding that plaintiff failed to allege sufficient facts to allow a reasonable inference of pre-suit knowledge of the asserted patent, where the complaint alleged that some defendants had entered into licensing agreements with a third party and obtained rights to two patents that cited the asserted patent as prior art, as this "link between the [asserted] patent and defendants . . . [was] too tenuous to sustain an allegation of knowledge"); *cf. MONEC Holding*, 897 F. Supp. 2d at 232 ("[Plaintiff] cites no authority indicating that actual knowledge of an original patent is equivalent to actual knowledge of a reexamined patent[.]"). This outcome is fatal to PDIC's indirect infringement claims as they relate to Defendants' pre-suit conduct.

In light of this, the Court need not address Defendants' other arguments as to why the TAC fails to plausibly allege indirect infringement as to the time period prior to the filing of the original Complaint.

### b. Post-filing indirect infringement

It is not disputed that service of the original Complaint on Ubisoft SA in April 2013 gave that Defendant actual knowledge of the '129 patent. (D.I. 79 at 8-9; D.I. 80 at 6-7); *see also, e.g., Softview LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) ("[T]he filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date."). Nevertheless, Defendants argue that any post-filing indirect infringement claims are insufficient

because the original Complaint did not provide fair notice to Defendants of the allegedly
infringing conduct. As a result, they argue, PDIC cannot plausibly allege that Defendants then
had knowledge of their infringement of the '129 patent, nor the specific intent to infringe that
patent. (D.I. 80 at 7; *see also* D.I. 77 at 12-14) In response, PDIC argues that "[t]he original
Complaint placed Ubisoft on notice that the use, offer for sale, and sale of both *Just Dance* and
*Rocksmith* directly and indirectly infringes." (D.I. 79 at 9)

It is important to first reiterate that the '129 patent expired just three months after PDIC
served Ubisoft SA with the original Complaint. Thus, any claims for post-filing indirect
infringement would be based solely on activity occurring during this roughly three-month
window of time. *See, e.g.*, *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir.
2015) ("We have long held that 'there can be no infringement once the patent expires,' because
'the rights flowing from a patent exist only for the term of the patent.'") (quoting *Kearns v.
Chrysler Corp.*, 32 F.3d 1541, 1550 (Fed. Cir. 1994)). As was noted above, with respect to post-
filing indirect infringement claims, a plaintiff's well-pleaded complaint puts the defendant on
notice of the asserted patent. And such a complaint may also further provide sufficient notice as
to how it is said that the defendant has infringed the asserted patent, thus satisfying the
"knowledge of patent infringement" element of indirect infringement claims.[17] Here, though, the

---

[17]     *See, e.g.*, *Bonutti Skeletal Innovations, LLC v. Globus Med. Inc.*, Civil Action No.
14-6650, 2015 WL 3755223, at *8 (E.D. Pa. June 15, 2015) (explaining that a well-pleaded
complaint can "put a defendant on notice of both the patents and the way in which its products
and/or methods are alleged to infringe those patents such that the defendant could be deemed to
have knowledge that it was inducing acts that constitute direct infringement"); *Versata Software,
Inc. v. Cloud9 Analytics, Inc.*, Civil Action No. 12-925-LPS, 2014 WL 631517, at *3 & n.5 (D.
Del. Feb. 18, 2014) (citing cases) (noting that "with regard to an allegation of post-suit induced
infringement, while a plaintiff need not provide a detailed, step-by-step description of the alleged
infringement in the complaint, this Court has required some identification of *how* it is that use of

19

original Complaint does not provide that type of notice.

With regard to Defendant Ubisoft, Inc., it was not sued in the original Complaint nor served with that Complaint. And so it is hard to conceive of how it could then have been said to be on notice of any indirect infringement claims against it.

As for Defendant Ubisoft SA (the only Defendant listed in the original Complaint), the Complaint alone could not have put it on notice of the basis for the indirect infringement allegations now lodged against it. For one thing, the four-page Complaint did not provide many details as to how Ubisoft SA itself was said to infringe the patent-in-suit in any manner—other than to simply allege that it did so "directly" by "developing, making, using, offering for sale and/or selling" the *Just Dance* games and that those games "allow the control of a virtual environment in response to a music signal[.]" (D.I. 1 at ¶¶ 9-10)  More importantly, the original Complaint could not even bring itself to allege that (1) Ubisoft SA *indirectly infringed* the '129 patent at all (and that its customers were directly infringing the patent); or (2) Ubisoft SA infringed the patent in any manner due to its manufacture/use/sale or offer for sale *of the Rocksmith game*. (*Id.* at ¶¶ 10-11; *see also* D.I. 80 at 3, 7)  Instead, the Complaint simply stated that further investigation "may reveal" evidence of such infringement. If anything, that allegation amounted to a statement that PDIC had *not* yet developed any evidence of such infringement. (D.I. 1 at ¶¶ 10-11)[18]  If PDIC did not then "know," for example, that Ubisoft SA indirectly

the accused product infringes the patent, in order to plausibly assert that the indirect infringer knew that the downstream use of its products constitutes patent infringement").

[18]     As described above, (*supra* Section I.B), the original Complaint's speculative allegations in this regard prompted Ubisoft SA to move to dismiss those "placeholder" claims—Ubisoft SA argued that PDIC's "wishy-washy language fail[s] to put Ubisoft [SA] on notice as to whether [indirect] infringement [and direct infringement as for the *Rocksmith* game]

20

infringed the asserted patent and had not charged Ubisoft SA with such conduct, how could Ubisoft SA be said to be on notice of that conduct?

If there was some way to factually articulate how what *was* alleged in the original Complaint could have given Ubisoft SA notice of the currently pleaded allegations of indirect infringement against it, PDIC would have had to have set this out in the TAC. But it has not. Thus, it is impossible for the Court to conclude, based on the record before it, that the original Complaint's allegations could fairly put Ubisoft SA on notice of its own indirect infringement of the '129 patent, with regard to the disputed time period of between April 16, 2013 through July 14, 2013. *Cf. Bonutti Skeletal Innovations, LLC*, 2015 WL 3755223, at *8 (finding that the plaintiff's allegations of defendants' post-suit knowledge of infringing conduct were insufficient where "[w]hile the Complaint identifies the six Asserted Patents and names a number of [defendant's] products that allegedly infringe these patents, it contains no explanation as to how [defendant's] products infringe [plaintiff's] patents or how medical professionals' use of those products constitute infringement"); *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, Civil Action No. 13-2052-LPS, 2014 WL 4675316, at *5 (D. Del. Sept. 19, 2014) (holding that the Court could not plausibly infer that the defendant had sufficient post-suit knowledge of the infringing conduct where, "[a]lthough the Accused Products were identified in the Complaint and in the [first amended complaint], neither document sets out factual allegations regarding how these products are said to infringe the Asserted Patents when utilized by the respective alleged direct

---

are even at issue in the case" and is "further devoid of any allegations or facts required to support such claims." (D.I. 5 at 1, 2) And in response, PDIC filed the FAC (prior to the expiration of the '129 patent), in which it *withdrew* these allegations altogether, and in which it did not even mention *Rocksmith* nor a charge of indirect infringement. (D.I. 8)

infringers"); *MONEC Holding*, 897 F. Supp. 2d at 234-35 (granting a motion to dismiss post-suit indirect infringement claims where the complaint "fail[ed] to supply any factual allegations that would convert the post-suit knowledge [of the asserted patent] into a plausible allegation of knowledge of the infringing use").[19]

## B.    Willful Infringement

PDIC's TAC also alleges that Defendants' infringement of the '129 patent is willful.

---

[19]    PDIC cites to several cases in support of its argument that its original Complaint "placed Ubisoft on notice that the use, offer for sale, and sale of both *Just Dance* and *Rocksmith* directly and indirectly infringes[,]" (D.I. 79 at 9), but its citation to those cases is not persuasive. As to three of the cases, unlike here, the complaints at issue contained factual allegations that went to all elements of an indirect infringement claim against the defendants. In *Clouding IP, LLC v. Rackspace Hosting, Inc.*, No. 12-675-LPS, 2014 WL 495752 (D. Del. Feb. 6, 2014), for example, this Court found that the plaintiff had sufficiently pleaded induced infringement where its second amended complaint: (1) alleged that the defendant had actual knowledge of the asserted patent since at least the filing of the original complaint; (2) alleged facts as to how the defendant's customers were said to infringe the asserted patent through the use of the defendant's products; and (3) alleged specific intent through factual allegations regarding the defendant's advertising. *Clouding IP, LLC*, 2014 WL 495752, at *2-3. In *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390 (D. Del. 2013), this Court found that the plaintiff had sufficiently pleaded post-complaint induced infringement where, *inter alia*, the defendant had not even challenged the sufficiency of the plaintiff's allegations with respect to the defendant's knowledge of infringement, and the plaintiff had alleged that defendants "provided technical support and instructions to their customers on how to use products in such a way as to infringe the patented invention." *Telecomm Innovations*, 966 F. Supp. 2d at 394-95. And in *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559 (D. Del. 2012), the defendant had moved to dismiss the plaintiff's indirect infringement claims on the basis that such claims could not be limited to post-litigation conduct. *Walker Digital*, 852 F. Supp. 2d at 565. This Court rejected that argument and found the indirect infringement claims to be adequately pleaded, as the complaint identified the patent and the allegedly infringing conduct by setting out how defendants' customers' use of defendants' websites was said to infringe (e.g., by including exemplary "screen shots" as exhibits to the complaint) and by alleging that defendants instructed their customers as to how to use the accused products in an infringing manner. *Id.* at 561, 564-65. Finally, *Softview LLC v. Apple Inc.*, Civ. No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) was a different kind of case. There, the only aspect of the plaintiff's post-filing indirect infringement claims that defendant challenged was whether knowledge of the patents-in-suit first obtained from a complaint could support such claims; the Court ultimately concluded that it could. *Softview LLC*, 2012 WL 3061027, at *7.

(TAC at ¶¶ 75-76)  This claim's significance relates to damages, as in certain situations, "the court may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  With their Motion, Defendants argue that the TAC fails to state a claim of willful infringement.  (D.I. 77 at 14-15; D.I. 80 at 8)

Since briefing on the Motion was completed, the Supreme Court issued its decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), in which it rejected the United States Court of Appeals for the Federal Circuit's then-controlling two-part test for proving a claim of willful infringement.  That two-part test had required a patentee to prove by clear and convincing evidence that: (1) the infringer had acted despite an objectively high likelihood that its actions constituted patent infringement, without regard to the state of mind of the accused infringer, and (if objective recklessness was established), that (2) this risk was either known to the infringer or was so obvious that it should have been known.  *Halo*, 136 S.Ct. at 1930 (citations omitted).  *Halo* emphasized that the district court instead should exercise its discretion as provided in 35 U.S.C. § 284 in order to determine whether to award enhanced damages; it explained that the focus should be on whether the patentee has shown that this is an "egregious case[] of misconduct beyond typical infringement." *Id.* at 1932-36; *see also id.* at 1936 (Breyer, J., concurring) ("[T]he Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*.") (emphasis in original); *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 5:11-cv-761 (GLS/DEP), 2016 WL 3365437, at *5 (N.D.N.Y. June 16, 2016). The *Halo* Court also explained that the patentee need simply prove willfulness by a preponderance of the evidence, and that an independent showing of objective recklessness was

23

not required; instead, the "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo*, 136 S. Ct. at 1932-34; *see also PPC Broadband, Inc.*, 2016 WL 3365437, at *5.

PDIC's TAC fails to state a claim for pre-complaint willful infringement against both Defendants. This is because, as explained above, the TAC fails to sufficiently allege that, prior to the service of the original Complaint, Defendants had knowledge of the '129 patent. *See, e.g., DermaFocus LLC v. Ulthera, Inc.*, — F. Supp. 3d — , Civ. No. 15-654-SLR, 2016 WL 4263122, at *6 (D. Del. Aug. 11, 2016) ("Given the implausible inferences related to pre-suit knowledge, the court grants the motion to dismiss the [first amended complaint] as it relates to pre-complaint willfulness.").

To the extent that PDIC intends to state a claim for willful infringement with respect to direct and indirect infringement during the three-month window between service of the original Complaint and the expiration of the '129 patent, it also misses the mark. As to Defendant Ubisoft Inc., it was not sued in the original Complaint, and the TAC does not sufficiently explain how the allegations in that Complaint as to Defendant Ubisoft SA are said to have put Ubisoft Inc. on notice of its own willful infringement. As to Ubisoft SA, the original Complaint did not allege that it indirectly infringed the '129 patent, and so it could not be said to then be willfully committing indirect infringement during this three-month time period. And even if one were to assume that the original Complaint *did* sufficiently put Ubisoft SA on notice of its indirect infringement, the TAC does not sufficiently articulate how Ubisoft SA's actions during a short,

three-month period of time amount to an "egregious" case of infringement of the patent.[20]

*Compare CG Tech. Dev., LLC v. Big Fish Games, Inc.*, 2:16-cv-00587-RCJ-VCF, 2016 WL 4521682, at *14 (D. Nev. Aug. 29, 2016) (concluding that the plaintiff failed to state a claim for willful infringement under the *Halo* standard where the complaint "fail[ed] to allege any facts suggesting that [d]efendant's conduct is 'egregious . . . beyond typical infringement'") (quoting *Halo*, 136 S. Ct. at 1935), *with Simplivity Corp. v. Springpath, Inc.*, CIVIL ACTION NO. 4:15-13345-TSH, 2016 WL 5388951, at *18 & n.32 (D. Mass. July 15, 2016) (recommending that the plaintiff's willful infringement claim as to defendants' post-complaint conduct withstand defendant's motion to dismiss under the *Halo* standard, where the second amended complaint alleged that the defendant had "escalat[ed] [] infringing activities after receipt of the original Complaint").

PDIC's pre-suit and post-suit willful infringement claim against Defendants is thus

---

[20]     Defendants argue that PDIC's willful infringement claim fails because such a claim must be based on, *inter alia*, "*pre-suit* knowledge of the patent[,]," (D.I. 80 at 8 (emphasis in original)), an element that the TAC fails to sufficiently allege (as discussed above). This argument suggests that PDIC could not state a claim for willful infringement based solely on post-complaint conduct, as a general matter. It is true that before *Halo*, where a plaintiff had not sought a preliminary injunction, courts required that a willfulness claim must at least be based in part on the accused infringer's pre-filing conduct, and could not be based solely on post-filing conduct. *See, e.g., Mayne Pharma Int'l PTY Ltd. v. Merck & Co., Inc.*, Civil Action No. 15-438-LPS-CJB, 2015 WL 7833206, at *5 n.5 (D. Del. Dec. 3, 2015); *Softview LLC*, 2012 WL 3061027, at *8 (citing *In re Seagate*, 497 F.3d at 1374). While the *Halo* Court did not explicitly address this issue, some courts have held that, in light of the overall thrust of *Halo*, the prior rule proscribing post-complaint willful infringement claims (absent filing of a motion for a preliminary injunction) does not jibe with *Halo* and should be discarded. *See, e.g., DermaFocus LLC*, 2016 WL 4263122, at *6; *Simplicity Corp. v. Springpath, Inc.*, CIVIL ACTION NO. 4:15-13345-TSH, 2016 WL 5388951, at *18 & n.32 (D. Mass. July 15, 2016); *but see Dorman Prods., Inc. v. Paccar, Inc.*, — F. Supp. 3d —, Civil Action No. 13-6383, 2016 WL 4440322, at *9 (E.D. Pa. Aug. 23, 2016). The Court will assume herein, without deciding, that a willful infringement claim based solely on post-filing conduct is cognizable.

subject to dismissal.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' Motion be GRANTED and that PDIC's indirect infringement and willful infringement claims be dismissed from PDIC's TAC.[21]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.


Dated: November 4, 2016

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE


---

[21]    As for the nature of the dismissal, the Court notes that PDIC did not request leave to amend the TAC in the event the Court granted Defendants' Motion. (*See* D.I. 79) Nor did Defendants specifically address the issue of amendment, or specifically request that the indirect and willful infringement allegations be dismissed "with prejudice." (*See, e.g.*, D.I. 77 at 15; D.I. 80 at 9) In the absence of argument from either side with respect to the issue of amendment, the Court will not take the issue up here.