# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 FAX

Rodger D. Smith II
(302) 351-9205
rsmith@mnat.com

Original Filing Date: February 14, 2018
Redacted Filing Date: February 21, 2018

The Honorable Christopher J. Burke
United States District Court
844 North King Street
Wilmington, DE  19801

REDACTED - PUBLIC VERSION

Re:   *Princeton Digital Image Corp. v. Konami, et al.*, C.A. No. 12-1461 (LPS-CJB) &
      *Princeton Digital Image Corp. v. Ubisoft,* C.A. No. 13-335 (LPS-CJB)

Dear Judge Burke:

Pursuant to the Court's February 12, 2018 Oral Order, and in preparation for the discovery dispute teleconference scheduled for Wednesday, February 21, 2018, at 1:00 p.m., Defendants submit this letter outlining the discovery disputes.

### A.  PDIC's Deficient Infringement Contentions

PDIC has consistently demonstrated its inability to state a viable infringement theory. This Court has twice ordered PDIC to supplement its deficient contentions.  Unfortunately, PDIC's Supplemental Contentions served January 12, 2018,[1] remain deficient and PDIC has declined to provide any additional disclosure.  If PDIC *cannot* fix its contentions or state a viable infringement theory, this litigation should be dismissed.

**Equivalents:** PDIC's contentions fail to identify the structure required by the claims in the accused products.  PDIC's infringement theory as to the "means for receiving" and "means for producing" limitations is based on a theory of equivalents, yet PDIC provides no disclosure of how the accused products are allegedly equivalent to the structure required by the claims.  *See* Ex. D at 5, 38, 46-47 (claiming the accused products "perform[ ] the same functions as, and algorithmically is structurally the same as or a structural equivalent of, the GL software library and the Fakespace, Inc. VLIB Virtual Reality software package described in the '129 patent specification").  The contentions neither identify the structure in the GL software library and Fakespace VLIB VR software package required by the claims, nor do they explain what or how in the accused products is "equivalent" to that structure.  Without this identification, PDIC cannot prove its case, and Defendants have been denied fair notice of PDIC's claims. *See Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *4 (D. Del. Feb. 14, 2017) (Stark, J.) (granting motion to strike patentee's doctrine of equivalents infringement contentions where the "deficiency is highly prejudicial to Defendants, who lack notice of how

---

[1]   PDIC served separate, but very similar, infringement contentions on Harmonix, EA, Konami, and Ubisoft.  (Exs. A, B, C, and D, respectively.)  For simplicity, Defendants cite to the Ubisoft infringement contentions (Ex. D).

their accused products purportedly infringe under the DOE"); *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 5633203, at *1 (D. Del. Nov. 21, 2017), *citing Best Med. Int'l, Inc. v. Accuray, Inc.*, 2013 WL 3305478, at *2 (W.D. Pa. July 1, 2013) (rejecting "boilerplate" equivalents disclosures).

**Spectral Analysis:**  Perhaps the most glaring omission relates to the requirement in the claims that "*spectral analysis*" be performed at some point.  PDIC acknowledges this requirement of the claims (*see* Ex. D at 5, 38, and 46-47), but does not allege – let alone show – that spectral analysis is performed in any of the accused products.  Other than reciting the construction, the words "spectral analysis" appear nowhere in the contentions.  This is a key element of the claims (*see, e.g.,* R&R at 22-26), and PDIC reads it out entirely.

**General Deficiencies:**  Other deficiencies include the following:

- No disclosure of what action is alleged to be the action of prerecording a control track.  (In a meet-and-confer with Defendants, PDIC said it was the combination of "processing and storing," but refused to identify the specific structure or to amend its contentions.)
- No disclosure of what specific structure is alleged to be the prerecorded control track.
- No disclosure of specific structures in which "processors in the gaming consoles" and which "software loaded on those systems" correspond to the requirements of Limitation 12.C.
- No disclosure of which "gaming consoles" are accused (other than Nintendo and Sony).

Defendants request that PDIC either be required to cure these deficiencies, or stipulate to noninfringement.  Defendants request further that depositions of Defendants' witnesses occur only after PDIC has provided adequate infringement contentions.

**B. PDIC's Failure to Produce Information Regarding the GL Software Library and Fakespace VLIB Software Required By the Asserted Claims**

All three asserted claims of the '129 patent require "a processor programmed with ***GL software library and the Fakespace, Inc. VLIB Virtual Reality software package . . .***"  D.I. 129 at 38-39 ("means for receiving the first signal and influencing action within a virtual environment in response to said first signal" and the "means for producing the virtual environment in response to said prerecorded control track" limitations).  Defendants have sought the production of the "GL software library and the Fakespace VLIB Virtual Reality software" from plaintiff PDIC, from Fakespace, and from the inventors of the '129 patent, all of whom are represented by plaintiff's counsel.[2]  If PDIC contends that documentation describing this structure has been produced, it should say so, and specifically identify such documentation.  If PDIC contends that the accused products are equivalent to this structure, it should chart it (*see* "Equivalents").  But to date PDIC has done neither of these, leaving Defendants in the dark as to what this structure implicates.

Fakespace recently produced pictures of what appear to be magnetic tapes, some of which have "VLIB" written on the label, that are dated ***years after*** the filing of the '129 patent.

---

[2]     *See* Harmonix's Requests for Production dated May 16, 2016 (Ex. E), Request Nos. 1, 5, 9, 45, 54; and Subpoenas to Fakespace (Ex. F), Mark Bolas (Ex. G), McDowell (Ex. H), Michael Bolas (Ex. I).

PDIC, however, has refused to: (1) verify whether the tapes contain any version of the "GL software library and Fakespace VLIB software"; or (2) provide the information needed to access the information on the tapes.

### C.     PDIC's Failure to Provide Information Related to Marking

PDIC has the burden of proving compliance with 35 U.S.C. § 287 (i.e., marking) to support its claims for pre-suit damages. To date, however, PDIC has refused to substantively address marking in response to interrogatory requests and correspondence. Defendants request that the Court compel PDIC to meaningfully respond to these discovery requests, as they are severely limiting, if not dispositive, of this case.

In July and August 2016, Defendants served interrogatories on PDIC asking whether any products were marked and, if so, for evidence of marking.[3] At this same time, PDIC submitted its tutorial to the Court, representing that the "inventive features" of the Fakespace "Soundsculpt Toolkit" were "described in the application for the '129 patent." D.I. 136, slides 9-11, submitted July 22, 2016. Fakespace exhibited its "unique virtual reality (VR) music experience" – using the "Soundsculpt Toolkit [which] uses cues extracted from recorded music to create geometry and control object behaviors within a virtual world" – at "Strats, Studios and the Seattle Sound" in December 1996-January 1997, after the '129 patent issued in April 1996, and operated a website describing the same. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. J)

Yet PDIC has not identified any evidence of marking or other compliance with § 287. Instead, PDIC claims vaguely that neither Fakespace nor any prior assignee "designed, manufacture, or sold any commercial product or system that embodies the invention of the claims 14, 19, and 20." (Ex. K). And PDIC noticeably excludes "offering to sell," which also requires marking according to § 287. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ If PDIC is asserting that the Fakespace Music Playback System, or any of the systems mentioned above, does not practice the claims, PDIC must prove it. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1369 (Fed. Cir. 2017) ("It was [the patentee]'s burden to prove those products – once identified – do not practice the patent-at-issue").

This issue is dispositive for some defendants (such as Ubisoft, Inc., which was not sued until after the expiration of the '129 patent), and substantially limits the scope of the case for the remaining Defendants to eight months or less. Defendants request that the Court order PDIC to fully respond to Defendants' pending interrogatories by providing proof, if any, of its compliance with § 287, before requiring the Defendants to incur further discovery expense.

### D.     PDIC's Improper Pursuit of Discovery on Dismissed Claims

PDIC attempted to plead indirect and willful infringement against Ubisoft, Inc. and Ubisoft Entertainment S.A. in the '335 case, and those claims were dismissed in their entirety. D.I. 138. The dismissal was largely based on the Court's determination that PDIC's "two degrees of separation" theory – i.e., that Ubisoft cited to a Gibson Guitar patent that, in turn, describes the '129 patent in the background of the invention section – was "too tenuous to permit

---

[3]     *See, e.g.* EA Interrogatory Nos. 4 and 5 (Ex. L); Ubisoft Interrogatory No. 15 (Ex. M).

the reasonable inference that Defendants had actual knowledge of the '129 patent." D.I. 138 at 3. All claims of indirect and willful infringement were dismissed, leaving only a claim of direct infringement against Ubisoft, Inc.

Ignoring this order, PDIC is pursuing five categories of discovery relating to the same factual allegations that failed the plausibility test on Ubisoft, Inc. (as document requests, interrogatories, and 30(b)(6) topics) as well as through document and deposition subpoenas to two third parties.[4] These five categories mirror the allegations of indirect infringement that were rejected by the Court as implausible – i.e., business relations with Gibson Guitar and prosecution activities relating to citations of the Gibson Guitar patent. *Compare with* D.I. 121 (R&R at 9-12). Ubisoft, Inc. has requested PDIC withdraw the discovery, but it has refused. (Ex. S).

Ubisoft seeks a protective order as to this discovery, and requests that the Court quash the third-party subpoenas. The Court has consistently disallowed parties to conduct discovery into claims that are dismissed. *Eurand, Inc. v. Mylan Pharmaceuticals*, C.A. No. 08-889-SLR (D. Del. April 13, 2010) ("Mylan is requesting substantial discovery under Rule 34 on subjective intent related to prior art not yet plead as a basis for inequitable conduct to figure out whether it has any basis for inequitable conduct in relation to that prior art. ***It is improper to use discovery in search of a factual predicate required to be plead in the first instance.***"); *Parallel Networks Licensing, LLC v. IBM*, C.A. No. 13-2072 (D. Del. Aug. 20, 2015) (rejecting request for discovery that pre-dated certificate of correction issuance on the patent, and noting that "discovery is not without bounds"); *In re Fuqua Industries, Inc. Shareholders Litig.*, 1999 WL 959182 (Del. Ch. Sept. 17, 1999) ("discovery as to facts relating to dismissed claims is not relevant and permissible under some broad concept of Defendants' motives being an issue"); *Levine v. Smith*, 1987 WL 28885, at *5 (Del. Ch. Dec. 22,1987) ("To overcome a Rule 12(b)(6) motion, the plaintiff must rely solely on the allegations of his complaint. He may not take discovery to demonstrate the legal validity of his claim. Only after the plaintiff has established the legal sufficiency of his claim is he permitted to go forward with discovery.").

PDIC cannot fairly conduct a fishing expedition on claims that have not survived the pleading stage. *Bell Atl. v. Twombly*, 550 U.S. 548, 550 (2007) (minimum pleading requirements of Rule 8(a) exist to expose weakness in allegations "at the point of minimum expenditure of time and money by the parties and the court"); *see also id.* at 559 ("it is no answer to say that a claim just shy of a plausible entitlement can be weeded out early in the discovery process"). If PDI contends that it has a sufficient basis to allege that Ubisoft, Inc. had knowledge of the '129 patent and knowledge of infringement of the '129 patent before filing of this lawsuit, then the proper course of action is to seek leave to amend its complaint to include such allegations (which Ubisoft contends are futile). Until then, Ubisoft requests that the Court protect it and unrelated third parties from improper and unnecessary discovery.

                                                          Respectfully,

                                                          */s/ Rodger D. Smith II*

                                                          Rodger D. Smith II (#3778)

---

[4] *See* Ex. N (Interrogatory Nos. 7-9); Exhibit O (RFP Nos. 9-13); Ex.P (30(b)(6) Notice Topics 12-15); Ex. Q (Schedule A, Subpoena to Jakob Parks); Ex. R (Schedule A, Subpoena to Timothy Lohse).

RDS/rah
Enclosure
cc:    Clerk of Court (via hand delivery)
        All Counsel of Record (via electronic mail)