# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UBISOFT ENTERTAINMENT SA and ) <br> UBISOFT, INC., ) <br> ) <br> Defendants. ) | Civil Action No. 13-335-LPS-CJB |

## MEMORANDUM ORDER

At Wilmington this **20th day of April, 2018**.

**WHEREAS**, the Court has considered the letter submissions by Plaintiff Princeton Digital Image Corp. ("Plaintiff") and Defendant Ubisoft Inc. ("Defendant" or "Ubisoft"), (D.I. 161, 162, 164, 165), relating to the pending joint motions to resolve certain discovery disputes between these parties, (D.I. 159, 177),[1] as well as the parties' arguments made during the February 21, 2018 and March 14, 2018 teleconferences with the Court;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1. Plaintiff first requests that Ubisoft complete its technical document production regarding the accused *Just Dance* games. (D.I. 162 at 1-2 (citing RFP No. 1)) Here, the parties have agreed to negotiate a stipulation that one of the games (*Just Dance* 3 or *Just Dance* 4) is representative of all of them, but have not yet completed that stipulation. (*Id.* at 2; D.I. 164 at 1;

---

[1] There are three discovery disputes raised by Ubisoft and the Defendants in the related case, *Princeton Digital Image Corp. v. Konami, et al.*, C.A. No. 12-1461-LPS-CJB (relating to Plaintiff's infringement contentions, information relating to the GL Software Library and Fakespace VLIP Software, and information relating to marking) that remain outstanding. (D.I. 161 at 1-3) The Court will resolve these in a forthcoming order.

D.I. 180 (hereinafter "Tr. I") at 59-60; D.I. 191 (hereinafter "Tr. II") at 47-48) By no later than **April 30, 2018**, the parties shall report to the Court by way of a joint letter as to whether such a stipulation has been reached (and if not, what is the status of the parties' discussions on the issue). Beyond that, however, it appears that Ubisoft has recently produced technical documentation responsive to this request that it obtained from third parties, (D.I. 179 at 2; Tr. I at 59-60; Tr. II at 47-48), which Plaintiff is in the process of reviewing, (Tr. II at 51-52). Thus, with the Court not now having a basis to find that Ubisoft has failed to meet a discovery obligation, the request is otherwise DENIED.

2. Plaintiff next requests that Ubisoft be ordered to produce summary sales, licensing, costs and profits information related to the accused games (*Just Dance* and *Rocksmith*), as well as a Rule 30(b)(6) witness to testify regarding this information. (D.I. 162 at 2 (citing RFP Nos. 2, 17, 18, 20 and Rule 30(b)(6) Topic No. 10)) During the teleconference, Plaintiff clarified that it seeks, pursuant to this request, "a spreadsheet that identifies for each game title for the accused consoles [] the sales amounts during the course of the six years prior to the original complaint." (Tr. I at 67) Plaintiff's remaining claim against Ubisoft in this case is for direct infringement relating to Ubisoft's internal use, development, and/or testing in the United States of the accused games. (*See* D.I. 138; D.I. 162 at 2; D.I. 164 at 2) As for the relevance of the sought-after documents, Plaintiff asserts that "sales can be considered as a basis for damages when, as here, the defendant infringes by using a patented invention (for example, to manufacture or test a product) in order to make those sales." (D.I. 162 at 2; *see also* Tr. I at 68-69) For its part, Ubisoft asserts that Plaintiff has "failed to even attempt to satisfy its burden to show relevance" of such information given that sales to end users, or use by end users, are not

infringing activities here. (D.I. 164 at 3; Tr. at 70-73) Ubisoft's objection is based solely on relevance, as it acknowledged that obtaining the requested information did not impose an undue burden on it. (Tr. at 72-73) The Court cannot say, at this juncture, that the sought-after information is irrelevant to Plaintiff's damages claim, and now is not the proper time to challenge the legality of Plaintiff's damages theory. *Cf. Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1310 (Fed. Cir. 2015) (finding that the jury was properly told that it may consider any foreign sales that resulted from infringing use in the United States in order to value that use); *GE Healthcare Bio-Scis. AB v. Bio-Rad Labs, Inc.*, No. 1:14-CV-07080-LTS-SN, 2015 WL 7582967, at *2 (S.D.N.Y. Nov. 25, 2015) (explaining that discovery of foreign sales information was "relevant to [the plaintiff's] claim for damages for allegedly infringing activities in the United States since it has, at a minimum, implications for the valuation of the invention"). Therefore, Plaintiff's request is GRANTED.[2] Defendant shall produce responsive documents by no later than **April 30, 2018** and shall designate a Rule 30(b)(6) witness to testify on this topic.[3]

---

[2] *See Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC (LB), 2013 WL 131073, at *1 (N.D. Cal. Jan. 9, 2013) (granting motion to compel certain sales information where the defendant did not articulate any burden, and the plaintiff articulated a theory of relevance as to damages, because even while such theory may ultimately turn out to be unsound, the appropriate vehicle to make such a challenge would be a *Daubert* motion); *Elan Microelecs. Corp. v. Apple, Inc.*, No. C 09-01531 RS (PSG), 2011 WL 4048378, at *2 (N.D. Cal. Sept. 9, 2011) (explaining that while defendant may ultimately be right that plaintiff's damages theory is unsound, a *Daubert* challenge is typically the proper vehicle to test the validity of that theory, not an opposition to a motion to compel, and ordering the sales-related discovery to be produced).

[3] Defendant also argues that the damages-related discovery period should be limited to six years prior to the filing of the Third Amended Complaint, rather than six years prior to the filing of Plaintiff's original complaint, which initially named the wrong Ubisoft entity. (D.I. 162 at 2; D.I. 164 at 3-4) The parties' argument on this issue is not fulsome or well-supported with citation to the record. (D.I. 162 at 2-3; D.I. 164 at 4) Therefore, at this juncture, the Court declines to limit the damages-related discovery period as Defendant requests. The Court's decision is without prejudice to Defendant's ability to later raise this issue, by way of a pre-trial

3

3. The third issue is Plaintiff's request that Ubisoft produce documents relating to Ubisoft's development, publishing, distribution, licensing and settlement agreements concerning the accused games, and communications related to these agreements. (D.I. 162 at 3 (citing RFP Nos. 1, 3, 16, 17)) The Court understands that, after discussion with Plaintiff to clarify the nature of the request, Ubisoft produced the requested documents. (D.I. 164 at 2) Therefore, Plaintiff's request is DENIED AS MOOT.

4. Finally, Plaintiff also requests that the Court: (1) order Ubisoft to produce documents and produce a Rule 30(b)(6) witness relating to the acquisition of *Rocksmith*, the prosecution of patent applications describing that software, and Ubisoft's partnership with Gibson Guitar Corp. ("Gibson"); and (2) overrule Ubisoft's objections to third-party subpoenas Plaintiff intends to serve on a former Ubisoft employee and patent attorney, which will seek information about Ubisoft's acquisition of the software that was ultimately released as *Rocksmith* and the acquisition and prosecution of related patent applications. (D.I. 162 at 3-4 (citing RFP Nos. 11, 13, Rule 30(b)(6) Topics 13-15, and exs. 12-13)) Meanwhile, Ubisoft seeks a protective order as to this discovery and requests that the Court quash the third-party subpoenas. (D.I. 161 at 4) The Court dismissed Plaintiff's claims of indirect and willful infringement against Ubisoft and Ubisoft Entertainment SA, leaving only Plaintiff's claim of direct infringement against Ubisoft Inc. remaining in the case. (D.I. 121; D.I. 138) Ubisoft explains that the discovery at issue here relates to the same allegations of indirect infringement that were found by the Court to be implausible, and asserts that Plaintiff should not be permitted to "conduct a fishing expedition on claims that have not survived the pleading stage." (D.I. 161 at 4) Indeed, Plaintiff asserts that

motion.

it is seeking discovery on these issues in part because Plaintiff "should be permitted to consider whether the actual facts are sufficient to amend its pleadings to include claims for indirect and willful infringement." (D.I. 165 at 4; *see also* D.I. 162 at 4; Tr. I at 53) The Court agrees with Defendant that, as a general matter, it is not appropriate for a party to utilize the discovery process to determine whether or not it has a plausible claim. *Eurand, Inc. v. Mylan Pharms., Inc.*, 266 F.R.D. 79, 84 (D. Del. 2013) ("It is improper to use discovery in search of a factual predicate required to be pled in the first instance."); *see also, e.g., Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim.") (emphasis in original); *Apotex, Inc. v. Mylan Pharms., Inc.*, No. 12-60704-CIV, 2013 WL 8184264, at *4 (S.D. Fl. June 4, 2013) ("Plaintiffs are not entitled to discovery that is *only* relevant to . . . claims that have been dismissed from a case. . . . It is equally true that Plaintiffs are entitled to discovery on . . . claims that have been dismissed where the information sought is otherwise relevant to issues in the case.") (internal quotation marks and citation omitted) (emphasis in original). Plaintiff has itself indicated that it would be using the sought-after discovery for such a purpose.

5. Plaintiff also argues, however, that this discovery is relevant to its direct infringement claims regarding Ubisoft's use of *Rocksmith* because "it is likely to pertain to the features of *Rocksmith*, the peripheral devices used with *Rocksmith* (including Gibson guitars), and Ubisoft['s] infringing acts of developing, testing, and using *Rocksmith* in the United States." (D.I. 162 at 4) In response, Ubisoft explains that it has already produced documents relating to the development of *Rocksmith* and to the technical and functional operation of the accused game,

5

and Plaintiff has not asserted any deficiencies with respect to that production. (Tr. I at 49; D.I. 164 at 3) The Court has reviewed the discovery requests at issue, (*see* D.I. 161 at 4 n.4; D.I. 162 at 4), and concludes that they are primarily, if not exclusively, focused on obtaining information regarding the now-dismissed allegations of indirect and willful infringement. Whatever dim potential there is that certain responsive documents could in some way *also* relate to Plaintiff's direct infringement allegations, the discovery at issue, as written, is not narrowly tailored to such allegations.[4] *See Novanta Corp. v. Iradion Laser, Inc.*, Civil Action No. 15-1033-SLR-SRF, 2016 WL 4987110, at *4 (D. Del. Sept. 16, 2016) (noting that it is the propounding party's burden to show how discovery is proportional to the needs of the case and denying the plaintiff's motion to compel discovery that was not "narrowly tailored or proportional to the infringement claims in the pending suit"). Thus, the Court DENIES Plaintiff's requests relating to these documents and its third-party subpoenas, and GRANTS Ubisoft's motion for a protective order and motion to quash the third-party subpoenas.[5]

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[4] Indeed, many of the specific discovery requests at issue cite to the averments of the Third Amended Complaint related to Plaintiff's now-dismissed claims. (D.I. 162 at 4 (citing *id.*, ex. 5 (Objections to RFP Nos. 11, 13); *id.*, ex. 8 (Objections to Rule 30(b)(6) Topics 13, 14, 15))

[5] Although Plaintiff asserted that Ubisoft does not have standing to object to subpoenas served on third parties, (D.I. 162 at 4), a party may move to quash when it claims a personal right or privilege regarding the subject matter of a subpoena duces tecum directed to a nonparty, *Jones v. Crisis Intervention Servs.*, 239 F. Supp. 3d 795, 801 (D. Del. 2017) (internal quotation marks and citations omitted). The subjects of the subpoenas are an attorney and former employee of Ubisoft, and the subpoenas seek information regarding Ubisoft's patent prosecution matters and Ubisoft's business relationships. (D.I. 164 at 4) Accordingly, the Court finds that Ubisoft has standing to challenge the subpoenas.