## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PRINCETON DIGITAL IMAGE CORP.,   )
                                )
        Plaintiff,           )
                                )
        v.                  )     Civil Action No. 13-335-LPS-CJB
                                )
UBISOFT ENTERTAINMENT SA and   )
UBISOFT, INC.,                 )
                                )
        Defendants.       )

## REPORT AND RECOMMENDATION

Presently before the Court in this patent infringement action is Defendant Ubisoft Inc.'s

("Ubisoft" or "Defendant") "Motion to Dismiss, or in the Alternative, Transfer to the Northern

District of California Based on Improper Venue[,]" filed pursuant to Federal Rule of Civil

Procedure 12(b)(3) and 28 U.S.C. § 1406 ("the Motion"). (D.I. 143) Plaintiff Princeton Digital

Image Corp. ("Plaintiff" or "PDIC") opposes the Motion. For the reasons that follow, the Court

DENIES Ubisoft's Motion.

## I.    BACKGROUND

Plaintiff filed this action ("the *Ubisoft* Action" or "the instant case/action"), on February

27, 2013 against French corporation Ubisoft Entertainment SA, alleging direct infringement of

U.S. Patent No. 5,513,129 ("the '129 patent" or the "patent-in-suit" or the "asserted patent").

(D.I. 1) The instant action was the second case Plaintiff had filed in this District alleging

infringement of the asserted patent. On November 13, 2012, in Civil Action No. 12-1461-LPS-

CJB, Plaintiff filed suit accusing Defendants Harmonix Music Systems Inc. ("Harmonix") and

Electronic Arts Inc. of infringing the asserted patent; in that case, Plaintiff would later amend its

claims to also accuse Defendant Konami Digital Entertainment Inc. of infringement. (Civil

Action No. 12-1461-LPS-CJB (the "*Harmonix* Action"), D.I. 1, 8) Chief District Judge Leonard

P. Stark referred both cases to the Court thereafter to resolve all pretrial matters, up to and

including case-dispositive motions. (*See, e.g.*, D.I. 10) The two cases were later consolidated

for scheduling purposes. (D.I. 15)

After Plaintiff had amended its Complaint in the instant case twice, the Court stayed both cases in January 2014, pending completion of *inter partes* review ("IPR") proceedings at the United States Patent and Trademark Office ("PTO"). (D.I. 52) That stay was lifted on January 21, 2016, and the Court then issued a further Scheduling Order in the cases. (D.I. 69)

Thereafter, Plaintiff filed an unopposed motion to amend the operative Second Amended Complaint; the motion was granted, and on March 4, 2016, Plaintiff filed its Third Amended Complaint ("TAC"). (D.I. 72) In the TAC, Plaintiff added Ubisoft as a new Defendant. (*Id.*; *see also* D.I. 144 at 1)[1] The TAC alleged that Ubisoft is a California corporation, with its principal place of business in San Francisco, California. (D.I. 72 at ¶ 3) Plaintiff asserted claims of direct, indirect and willful infringement of claims 14, 19 and 20 of the asserted patent (the only claims of the patent that had not been invalidated during the IPR proceedings) against Ubisoft. (*Id.* at ¶¶ 32, 33-34, 75-76) With respect to Ubisoft Entertainment SA, the TAC asserted claims of induced infringement and willful infringement of claims 14, 19 and 20, but no claims of direct infringement. (*Id.* at ¶¶ 33, 75-76)

In response to the TAC, on April 1, 2016, both Defendants filed a partial motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "motion to dismiss"); the motion to dismiss sought dismissal of Plaintiff's allegations of indirect and willful infringement (and thus, it did not challenge Plaintiff's claims of direct infringement against Ubisoft). (D.I. 76: D.I. 77) Ubisoft did not assert at this time that venue as to it was improper.

The Court held a *Markman* hearing on August 31, 2016. Thereafter, on September 9, 2016, Plaintiff and all Defendants in both cases filed a joint stipulation, which sought to stay remaining fact discovery until after the District Court made a final ruling on claim construction

---

[1]     Herein, unless otherwise noted, when the Court refers to "Defendants," it is referring to the two Defendants in the *Ubisoft* Action: Ubisoft and Ubisoft Entertainment SA.

(i.e., issued a ruling as to the Court's forthcoming Report and Recommendations on claim construction). (D.I. 119) That stipulation was granted.

On November 4, 2016, the Court recommended that Defendants' motion to dismiss be granted ("the motion to dismiss R&R"). (D.I. 121) Plaintiff filed objections to the motion to dismiss R&R on November 21, 2016, (D.I. 122), and Defendants responded on December 8, 2016, (D.I. 124).

Meanwhile, on December 2, 2016, the Court issued the first of two Reports and Recommendations regarding claim construction and definiteness (together, "the claim construction R&Rs"). (D.I. 123) Ubisoft (along with the other Defendants in both cases) filed objections to that Report and Recommendation on December 23, 2016, (D.I. 126), to which Plaintiff responded on January 6, 2017, (D.I. 127).

On May 22, 2017, the Supreme Court of the United States issued its decision in *TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

Next, on June 16, 2017, the Court issued its second Report and Recommendation on claim construction. (D.I. 129) Ubisoft (along with the other Defendants in both cases) filed objections to that Report and Recommendation on June 30, 2017, (D.I. 131), to which Plaintiff responded on July 14, 2017, (D.I. 134). Plaintiff also filed objections to that Report and Recommendation on June 30, 2017, (D.I. 132), to which Ubisoft and the other Defendants in both cases responded on July 14, 2017, (D.I. 133).

Thereafter, on August 15, 2017, Plaintiff and all Defendants in both cases filed another joint stipulation. (D.I. 135) In that stipulation, the parties noted their desire to have the District Court make a final ruling not only on the pending objections to the Court's claim construction R&Rs, but also as to the pending objections to the Court's motion to dismiss R&R, before any further case activity occurred. (*Id.*) That stipulation, which sought such a stay until the District Court issued its opinions on all of the above-referenced objections, was thereafter granted.

In light of the two prior stipulations, from September 2016 until the District Court ruled on pending objections to the motion to dismiss R&R and claim construction R&Rs (a period of approximately 15 months), no further discovery occurred. During that 15-month time period, as is partly noted above, Plaintiff and Defendants in both cases did continue to litigate the pending objections to the motion to dismiss R&R and the claim construction R&Rs. Ubisoft filed briefs, notices and other documents relating to the objections to the pending R&Rs in this time frame. (D.I. 124-26; D.I. 128; D.I. 131; D.I. 133; D.I. 135; D.I. 137)

On December 12, 2017, the District Court issued a Memorandum Order overruling Plaintiff's objections to the Court's decision in the motion to dismiss R&R. (D.I. 138) As a result, there are no remaining claims in this action against Ubisoft Entertainment SA. (*See* D.I. 144 at 1 & n.1; D.I. 152 at 9; D.I. 155 at 3) Plaintiff's remaining claims in this case are those alleging that Ubisoft has directly infringed claims 14, 19 and 20 of the patent-in-suit by developing, testing and otherwise using certain accused video games in the United States. (D.I. 72 at ¶ 32; *see also* D.I. 144 at 3) On December 13, 2017, the District Court issued a Memorandum Order overruling all of Defendants' objections to the Court's decisions in the claim construction R&Rs and overruling-in-part and sustaining-in-part Plaintiff's objections. (D.I. 139)

Thereafter, the Court ordered the parties to submit a revised proposed Scheduling Order. The parties did so, and a new schedule in the two cases was entered on December 20, 2017. (D.I. 141) Pursuant to that schedule, the first of the cases to be tried will be tried on April 8, 2019. (*Id.* at 2)

On January 17, 2018, in lieu of filing an answer to Plaintiff's TAC, Ubisoft filed the instant Motion. (D.I. 143) Briefing on the Motion was complete on February 7, 2018. (D.I. 155)

## II. STANDARD OF REVIEW

### A. Patent Venue and 28 U.S.C. § 1400(b)

In patent infringement actions, venue is proper for domestic corporations "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) ("Section 1400(b)").[2] In 1957, the Supreme Court of the United States held in *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957), that Section 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions [of the general corporation venue statute,] 28 U.S.C. § 1391(c)[.]" 353 U.S. at 229. The *Fourco Glass* Court went on to conclude that for purposes of the first prong of Section 1400(b), a domestic corporation "resides" only in its state of incorporation. *Id.* at 226; *see also Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 707 n.2 (1972).

Then, in 1988, Congress amended Section 1391(c) to provide that "[f]or purposes of venue under this chapter" a defendant corporation shall be deemed "to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1578 (Fed. Cir. 1990), *abrogated by TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). Two years later, in light of those amendments, the United States Court of Appeals for the Federal Circuit held that Section 1391(c) dictated the meaning of "resides" in Section 1400(b). *VE Holding*, 917 F.2d at 1579-84. *VE Holding* thereafter governed venue in patent litigation for the next 27 years. *See Boston Sci. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 238 (D. Del. 2017).

On May 22, 2017, however, the Supreme Court issued its opinion in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). In *TC Heartland*, the Supreme Court

---

[2]    Foreign corporations, however, are subject to suit in any judicial district. *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 710-14 (1972); *In re HTC Corp.*, 889 F.3d 1349, 1356, 1361 (Fed. Cir. 2018).

reaffirmed the decision in *Fourco Glass* and reversed the Federal Circuit's decision in *VE Holding*, thereby concluding that a domestic corporation "resides" only in its state of incorporation in patent infringement actions. *TC Heartland*, 137 S. Ct. at 1517-21.

## B.     Federal Rule of Civil Procedure 12, Waiver and Forfeiture

A party may file a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Upon a motion by a defendant challenging venue, the plaintiff bears the burden to show that venue is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

Generally, the defense of improper venue is waived if not timely raised in either a defendant's motion to dismiss filed pursuant to Rule 12(b)(3), or in the defendant's answer. Fed. R. Civ. P. 12(g)(2) & 12(h)(1). However, in the wake of *TC Heartland*, a split emerged among district courts as to whether a defendant who had failed to raise a venue defense in a Rule 12 motion or responsive pleading before May 22, 2017 (the date of the Supreme Court's decision in *TC Heartland*), but then later brought a motion challenging venue based on *TC Heartland*, had waived its right to make such a challenge.[3] *See, e.g., Nat'l Prods., Inc. v. Arkon Res., Inc.*, CASE NO. C15-1984JLR, 2018 WL 1457254, at *3 (W.D. Wash. Mar. 23, 2018) (citing cases); *Treehouse Avatar LLC v. Valve Corp.*, Civil Action No. 15-427-JFB-SRF, 2017 WL 5564153, at

---

[3]     Federal Rule of Civil Procedure 12(g)(2) explains that, notwithstanding certain exceptions, a party that brings a motion pursuant to Rule 12 "must not make another motion under this rule raising a defense or objection *that was available* to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2) (emphasis added). Thus, these district court opinions explored whether: (1) the *TC Heartland*-inspired venue objection was "available" to the defendant in the pre-May 22, 2017 time frame when the defendant filed its initial Rule 12(b) motion, such that the defendant should have raised the objection in that motion; and (2) the defendant's failure to do so constituted waiver under Rule 12(h). *In re Micron Tech., Inc.*, 875 F.3d 1091, 1096 (Fed. Cir. 2017).

*2 (D. Del. Nov. 20, 2017). Some district courts concluded that *TC Heartland* was not an intervening change in controlling law sufficient to qualify as an exception to the waiver doctrine, while other district courts found that *TC Heartland* did effect an intervening change in the law, thus creating an exception to the general rule of waiver. *See Nat'l Prods.*, 2018 WL 1457254, at *3; *Treehouse Avatar*, 2017 WL 5564153, at *2. On November 15, 2017, the Federal Circuit resolved the split of authority in *In re Micron Technology, Inc.*, 875 F.3d 1091 (Fed. Cir. 2017), concluding that "[t]he Supreme Court changed the controlling law when it decided *TC Heartland* in May 2017." 875 F.3d at 1099. Thus, the *Micron* Court held that Rule 12(h)'s waiver provision was inapplicable to a defendant asserting a venue objection based on *TC Heartland* that had not been made in a Rule 12(b) motion filed prior to the *TC Heartland* decision. *Id.* at 1096, 1099-1100. As the Federal Circuit explained: "[t]he venue objection was not available until the Supreme Court decided *TC Heartland* because, before then, it would have been improper, given controlling precedent, for the district court to dismiss or to transfer for lack of venue." *Id.* at 1096.

Nevertheless, the Federal Circuit recognized that, in accordance with Federal Rule of Civil Procedure 1 and the Supreme Court's decision in *Dietz v. Bouldin*, 136 S. Ct. 1885 (2016), a district court may utilize its inherent powers and standard procedural devices to find forfeiture of a venue challenge in order to facilitate "'the just, speedy, and inexpensive resolution of disputes.'" *Id.* at 1100 (quoting *Dietz*, 136 S. Ct. at 1891). In finding such a timeliness challenge to be appropriate in the venue context, the *Micron* Court noted that "Congress has provided express statutory confirmation of judicial authority to consider the timeliness and adequacy of a venue objection: 28 U.S.C. § 1406(b) provides that '[n]othing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.'" *Id.* at 1101 (quoting 28 U.S.C. § 1406(b)); *see also, e.g., Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 324 U.S. 635, 639 (1945) ("The

7

right to have a case heard in the court of proper venue may be lost unless seasonably asserted."); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939) ("Being a privilege, [venue] may be lost. It may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct."); *Davis v. Smith*, 253 F.2d 286, 288 (3d Cir. 1958) (concluding that a party waives a venue objection when it "performs some act which indicates to the court that [it] elects not to raise [its] privilege of venue").

Under the framework set forth in *Dietz*, the district court's utilization of this inherent power "must be a reasonable response to the problems and needs confronting the court's fair administration of justice[,]" and "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz*, 136 S. Ct. at 1892 (internal citations and quotation marks omitted); *see also Micron*, 875 F.3d at 1100. A district court should exercise this authority "with caution[,]" resting its decision on "sound determinations of untimeliness or consent." *Micron*, 875 F.3d at 1101. While the *Micron* Court did not set out an exhaustive list of factors a district court should consider in determining whether a venue defense has been forfeited, it suggested that relevant inquiries include: (1) the length of the time gap from when the defense "becomes available" until it was asserted; (2) "how near is the trial, which may implicate efficiency or other interests of the judicial system and of other participants in the case[,]" and (3) whether the defendant employed a "tactical wait-and-see [approach] bypassing . . . an opportunity to declare a desire for a different forum, where the course of proceedings might well have been altered by such a declaration [of the defense]." *Id.* at 1102; *see also, e.g., Boston Sci. Corp.*, 269 F. Supp. 3d at 242-43 (noting that "[p]rototypical examples" for which a court may conclude that a defendant has forfeited a venue defense include "where a defendant raises venue for the first time on the eve of trial, or many months (or years) after *TC Heartland* was handed down, or where dismissal or transfer would unduly prejudice a plaintiff"); *cf. Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443-44 (3d Cir. 1999)

8

(finding that defendants waived a personal jurisdiction challenge where they sought from the Court affirmative relief in the form of motions for summary judgment "before securing a determination on their personal jurisdiction defenses").[4]

## III. DISCUSSION

In its Motion, Ubisoft asserts that because it is not incorporated in Delaware, has no physical presence in Delaware, and is not alleged to have committed acts of infringement in Delaware, venue in this district is legally improper as to it under *TC Heartland*. (D.I. 144 at 1; *see also* D.I. 145 at ¶¶ 2-6) Ubisoft therefore requests dismissal of the case for improper venue, or alternatively, transfer to the United States District Court for the Northern District of California, where venue would be proper. (D.I. 144 at 1) In response, Plaintiff primarily argues that Ubisoft forfeited its right to assert the lack-of-venue defense by continuing to litigate this case and actively seeking rulings from this Court for approximately eight months after the *TC Heartland* decision was issued, before finally asserting a defense of improper venue in January 2018. (D.I. 152 at 3, 5-10)

Ultimately, the Court agrees with Plaintiff that by waiting until January 2018 to assert its venue objection, Ubisoft forfeited such objection. In articulating the reasons for this decision below, the Court will first assess the proper date after which Ubisoft's conduct became relevant to the forfeiture inquiry. Then, the Court will explain why Ubisoft's conduct after that date

---

[4] The Court assumes without deciding that Federal Circuit law applies to whether a venue defense made pursuant to 28 U.S.C. § 1400(b) has been forfeited. *Cf. Micron*, 875 F.3d at 1101; *see also, e.g., Cutsforth, Inc. v. LEMM Liquidating Co.*, Civil No. 12-1200 (SRN/LIB), 2018 WL 847763, at *3 n.2 (D. Minn. Feb. 13, 2018). That said, the Court is not aware of (and no party has suggested) a way in which Federal Circuit law and the law of the United States Court of Appeals for the Third Circuit would conflict as to this issue.

amounted to forfeiture. Finally, the Court will consider other relevant factors that also played a role in its decision.[5]

### A. What is the Proper "Start Date" to Use When Assessing Ubisoft's Conduct?

As noted above, the *Micron* Court recognized that a relevant factor in examining the timeliness of a defendant's venue objection is how long it took the defendant to assert the objection from the time that objection first became available to the defendant. *Micron*, 875 F.3d at 1102. While it is clear that Ubisoft first asserted its venue objection by filing the Motion on January 17, 2018, the parties dispute the proper "start date" that is relevant to this inquiry. This dispute turns on the answer to the following question: On what date, prior to January 17, 2018, did the venue objection properly become available to Ubisoft, such that Ubisoft should have timely asserted it thereafter?

According to Ubisoft, its motion "was brought at the earliest possible time." (D.I. 144 at 5) Ubisoft then seems to point to two reasons as to why it was justified in not filing the instant motion until eight months after the *TC Heartland* decision: (1) the case was stayed at the time that *TC Heartland* issued; and (2) the venue defense was not available to it until December 13, 2017, when Chief Judge Stark affirmed that Plaintiff's claims against the foreign defendant, Ubisoft Entertainment SA, were dismissed. Neither reason is persuasive to the Court.

First, Ubisoft contends that its motion is timely because "the case was stayed for 15 months—beginning in September 2016 (before *TC Heartland*), continuing on May 22, 2017 (when *TC Heartland* was decided), and lifting on December 13, 2017 (6.5 months after *TC Heartland*)." (D.I. 155 at 3-4; *see also* D.I. 144 at 5-6) And in its reply brief, Ubisoft accuses Plaintiff of "downplay[ing]" the import of the stay by suggesting that the stay was limited to fact discovery, whereas, Ubisoft asserts, the relevant stipulation instead "ma[de] clear that [the stay]

---

[5]     Plaintiff argues that if the Court does not find that Ubisoft has forfeited its venue defense, it should permit discovery. (D.I. 152 at 11-13) However, because the Court finds that Ubisoft has forfeited any venue defense, it need not address this request for discovery.

applied to all 'further activity,' 'including the dates previously set by the Court' for pretrial and

trial, and specifically set all dates in the calendar to hinge off the entry of the Court's rulings."

(D.I. 155 at 4 (quoting D.I. 135)) But in making this argument, Ubisoft is glossing over some

critical facts: (1) *TC Heartland* issued in May 2017; and (2) the stipulation that it is actually

referring to in its reply brief was the one entered almost three months *after TC Heartland*, on

August 15, 2017. Importantly, the first stay-related stipulation—the one entered in September

2016 and the one that was in place as of the *TC Heartland* decision—was *not* couched as a

general, blanket stay on all matters relevant to the case. Rather, the September 2016 stipulation

stated:

> [R]ecognizing that the Court's claim construction ruling [] will
> likely affect the substance of the parties' positions, including
> Plaintiff's Supplemental Infringement Contentions to Konami and
> Ubisoft, as well as the scope of any remaining discovery that will
> need to take place, the parties *desire to extend the date for close of
> fact discovery in this case* until after receipt of the Court's claim
> construction ruling; and [] the parties *do not anticipate that the
> proposed extension will impact other deadlines established
> pursuant to the Amended Scheduling Orders, including the dates
> for a Pretrial Conference and Trial*[.]

(D.I. 119 at 2 (emphasis added); *see also* D.I. 152 at 2 (Plaintiff explaining that the "Court's stay

[entered in September 2016] . . . was limited to fact discovery")) It was not until the later August

2017 stipulation that the parties explained that they:

> [D]esire to amend the schedule to permit the Court to issue a
> [claim construction ruling] on all disputed issues, as well as an
> Order on Ubisoft's motion to dismiss, before any further activity in
> this case occurs, including the dates previously set by the Court for
> the Conference to Discuss the Order and Scheduling of Trials,
> Pretrial Conference, and Trial[.]

(D.I. 135 at 2)

Thus, at the time that the Supreme Court decided *TC Heartland* in May 2017, the stay on its face *was* limited to fact discovery. And so once *TC Heartland* issued, nothing about the wording of that stay, or its legal force, would have precluded Ubisoft from timely filing a motion to dismiss based on improper venue.[6] *Cf. Keranos, LLC v. Silicon Storage Tech., Inc.*, Case No. 2:13-cv-00017-RWS-RSP, (D.I. 383 at 3), (E.D. Tex. Mar. 1, 2018) (explaining that a stay of two case deadlines—the deadline to answer certain counterclaims and the deadline to respond to a motion to dismiss—did not preclude defendants from timely filing their motions to dismiss for improper venue while that limited stay was in effect). And even after the August 2017 stay was entered, certain proceedings still continued in this Court. Ubisoft could have sought to lift the stay at that point and assert its position on venue (i.e., before the District Court ruled on pending

---

[6]     Ubisoft also seems to suggest that the Federal Circuit's November 2017 ruling in *Micron* is relevant to assessing whether its motion was timely filed. (D.I. 144 at 6 (contending that Ubisoft's participation in briefing objections to the claim construction R&R "was concluded before the Federal Circuit confirmed, in *In re Micron*, that the defense of improper venue was not waived by a Rule 12(b) motion brought prior to *TC Heartland*")) However, the *Micron* decision unequivocally stated that the venue objection at issue was "available" to defendants when the Supreme Court decided *TC Heartland*. As a result of *TC Heartland*, the *Micron* Court explained, numerous defendants subsequently moved to dismiss or transfer based on venue in district courts across the country with varying results; one such motion is what gave rise to the issuance of the *Micron* decision in the first place. *Micron*, 875 F.3d at 1094; *see also, e.g., Akeso Health Scis., LLC v. Designs for Health, Inc.*, Case No.: CV16-07749 SJO (PJWx), 2018 WL 2558420, at *3 (C.D. Cal. Jan. 25, 2018) (noting that "*Micron* made it clear that the *TC Heartland* venue objection became 'available' on May 22, 2017" and therefore concluding that the defendant's "conduct is thus properly analyzed from the date of issue of the Supreme Court's *TC Heartland* decision, not the Federal Circuit's *Micron* decision, in order to determine whether or not its venue objection was timely raised"); *Intellectual Ventures II LLC v. FedEx Corp.*, CIVIL ACTION NO. 2:16-CV-00980-JRG, 2017 WL 5630023, at *3 (E.D. Tex. Nov. 22, 2017) ("[T]he Court begins by examining Defendant's conduct after *TC Heartland* was decided."); (D.I. 152 at 7 n.2). To the extent that Ubisoft is suggesting that only after *Micron* did the lack-of-venue defense really become available to it, such an argument is unpersuasive.

objections to the claim construction R&R and the motion to dismiss R&R). But it did not. Instead it remained silent and waited to act until those objections were resolved.

The Court is aware of district court opinions on forfeiture of venue that have been issued in patent cases where: (1) a general, blanket stay was in place at the time that *TC Heartland* issued; and (2) the stay later lifted, and a party then filed a motion seeking dismissal or transfer on improper venue grounds. In at least some of these cases, the courts treated the date that the stay was lifted as the operative date by which the plaintiff's forfeiture arguments (and the defendant's conduct) should be evaluated. *See, e.g., Silcotek Corp. v. Entech Instruments, Inc.*, CIVIL ACTION NO. 15-1531, 2018 WL 1818192, at *1, *3-5 (W.D. Pa. Apr. 17, 2018) (treating the date that the court lifted such a stay as the relevant "start date" in evaluating defendant's timeliness, where the case had been entirely stayed pending completion of PTO proceedings); *Infinity Comput. Prods, Inc. v. OKI Data Ams., Inc.*, CIVIL ACTION NO. 12-6797, 2018 WL 1035793, at *5 (E.D. Pa. Feb. 23, 2018) (explaining that where the cases were entirely stayed for approximately four years pending the reexamination of the patents, the court would treat the date that the stay was lifted as "the operative date to evaluate Moving Defendants' conduct and the waiver arguments").

For example, in *Silcotek Corp. v. Entech Instruments, Inc.*, CIVIL ACTION NO. 15-1531, 2018 WL 1818192 (W.D. Pa. Apr. 17, 2018), the district court had entered a stay of all proceedings at the request of all parties, while parallel proceedings were ongoing before the PTO. 2018 WL 1818192, at *1. The stay lasted from February 2016 through January 2018 (i.e., until eight months after the *TC Heartland* decision); in January 2018, the district court granted the parties' joint motion to reopen the case. *Id.* at *1-2. Shortly thereafter, the defendant moved

13

to dismiss or transfer based on lack of venue, and the plaintiff responded by arguing that the defendant had forfeited its venue defense. *Id.* at *2-3. The *Silcotek* Court ultimately determined that in undertaking a forfeiture analysis, it would not look to the date that *TC Heartland* issued as the relevant starting point—because doing so would essentially mean that the defendant would have been required to have filed a motion to lift the stay immediately after *TC Heartland* came down, in order to pursue its lack-of-venue argument. *Id.* at *3. The *Silcotek* Court noted that had that kind of motion been filed, and had the case then been transferred to the proper venue, the parties presumably would simply have filed a renewed request for a stay in that new venue, pending resolution of the PTO proceedings. *Id.* In the *Silcotek* Court's view, that "exercise would be pointless in a[n already] stayed matter that could be resolved in the other [PTO] proceedings or by the parties themselves[,] and would contradict the spirit of Federal Rule of Civil Procedure 1 because it could waste judicial resources." *Id.*

The scenario in *Silcotek* is different from that here, however. For one thing, as noted above, from the date of the *TC Heartland* decision until August 2017, a blanket stay was not in effect in this case. Instead, only discovery was stayed. The trial date remained in effect, and by the terms of the stay, any other necessary motions could have been filed at any time. And even after the second, broader stay was entered in August 2017, this matter was still not entirely halted in the District Court. At that point, Ubisoft (along with the other parties) was still asking the District Court to make rulings on substantive case issues, all while Ubisoft kept its venue objection in its back pocket. What if, in issuing its decision on claim construction/definiteness, the District Court had altered the Court's claim constructions in a manner favorable to Ubisoft and to the other Defendants (and unfavorable to Plaintiff)? Would Ubisoft, having remained

14

silent in the meantime about its lack-of-venue defense, then have sought a change of venue? Or would it have been content to keep the case here in this District? It is hard to know the answers to these hypothetical questions. But the point is that by not raising the venue defense sooner, Ubisoft permitted itself the opportunity to hedge its bets as to which venue it would proceed in, all while keeping this Court and Plaintiff in the dark about its position on that issue. And this silence came at a time when this Court was working to resolve important issues in the case. It is that kind of "tactical wait-and-see" approach that can give rise to forfeiture of a venue defense. *Micron*, 875 F.3d at 1102.[7]

Second, Ubisoft argues that the venue objection was not "available" to it until the District Court's December 13, 2017 ruling on the motion to dismiss—the ruling that *de facto* eliminated the foreign defendant "from this proceeding entirely which, accordingly, further eliminated any question as to whether venue over domestic defendant Ubisoft, Inc. is improper in this district." (D.I. 144 at 6; *see also* D.I. 155 at 3-4 (Ubisoft arguing that Chief Judge Stark's December 2017 ruling is what made the improper venue defense "'available'" to Ubisoft, and that it "immediately raised it" thereafter)) Ubisoft explains that waiting until after this date to file the instant motion "was entirely consistent with the concern raised by [the District Court] in other

---

[7]     The Court does not mean to suggest that acting as it did, Ubisoft was engaging in "nefarious" conduct. (D.I. 155 at 5) And the Court certainly acknowledges Ubisoft's point that from the date of the *TC Heartland* decision to the date when Ubisoft filed its Motion, it is not as if Ubisoft was actively litigating a vast, innumerable amount of legal issues (e.g., also requesting the Court's assistance with discovery disputes, or seeking legal rulings beyond those regarding claim construction/definiteness and the motion to dismiss R&R). But whatever its actual intent, Ubisoft's approach did allow it the ability to "wait-and-see" as to what this District's final decisions would be on a few important legal issues, before making a final call about whether it would pursue a lack-of-venue defense. *Micron*, 875 F.3d at 1102. That kind of tactical approach is disfavored by the applicable legal precedent.

15

cases that, where venue is proper as to a foreign corporation but improper as to a related domestic corporation, transfer of both defendants may not be 'the most reasonable and appropriate outcome.'" (D.I. 155 at 3-4 (quoting *Koninklijke KPN N.V. v. Kyocera Corp.*, Civil Action No. 17-87-LPS-CJB, 2017 WL 6447873, at *4 (D. Del. Dec. 18, 2017)).

This line of argument is not entirely clear nor persuasive to the Court. The holding of *TC Heartland* applied to domestic corporations. *TC Heartland*, 137 S. Ct. at 1516, 1520 & n.2. At the time that *TC Heartland* issued, then, regardless of whether the claims against the foreign defendant would ultimately be rejuvenated by the District Court, it should have been clear to Ubisoft that venue in this District was not proper *as to it*. And so there is no reason why the venue defense was not "available" to Ubisoft until Chief Judge Stark affirmed the Court's motion to dismiss R&R in December 2017. Indeed, shortly after *TC Heartland* issued, there were a number of cases in which a domestic corporation incorporated outside of Delaware, which had been sued along with foreign defendants, quickly moved this Court to dismiss or transfer for improper venue. That was exactly what happened, for example, in a case cited by Ubisoft: *Koninklijke KPN N.V. v. Kyocera Corp.*, Civil Action No. 17-87-LPS-CJB, 2017 WL 6447873 (D. Del. Dec. 18, 2017). 2017 WL 6447873, at *1, *4 (defendants moved to dismiss on June 9, 2017, less than one month after *TC Heartland* issued, requesting that "both [the domestic and foreign] Defendants be dismissed or transferred together to the Southern District of California pursuant to 28 U.S.C. § 1406(a)"); *see also, e.g., 3G Licensing, S.A. v. HTC Corp.*, Civil Action No. 17-83-LPS-CJB, 2017 WL 6442101, at *1, *3 (D. Del. Dec. 18, 2017) (same). Ubisoft does not represent that it would have declined to move to dismiss or transfer based on improper venue were the claims against the foreign entity to have remained in the case.

Ultimately, Ubisoft fails to adequately explain why it had to wait for Chief Judge Stark's decision on the motion to dismiss R&R in order to assert a defense of improper venue as to it. And so the Court does not view December 13, 2017 as the relevant date by which the venue objection was "available" to Ubisoft. Instead, as described above, the venue objection was available to Ubisoft on May 22, 2017, when *TC Heartland* issued.

### B.    Ubisoft's Conduct in the Case After *TC Heartland*

The Court now considers Ubisoft's conduct after *TC Heartland* issued. In that period, Ubisoft continued to actively participate in the litigation. In June and July 2017, it filed objections and responses to objections (along with the Defendants in the related *Harmonix* Action) to one of the claim construction R&Rs. (D.I. 131, 133) In October 2017, it filed a Statement that addressed Plaintiff's recently-filed Notice of Supplemental Authority; this filing related to Plaintiff's pending objections to the motion to dismiss R&R. (D.I. 137)

In the months after *TC Heartland*, then, Ubisoft was actively seeking rulings from this Court on significant issues in this case. What it was not doing was challenging venue, or giving this Court any hint that it intended to do so in the future.[8] It was only after the District Court worked to issue its decisions on the motion to dismiss R&R and claim construction R&Rs that Ubisoft contested venue in this Court—eight months after *TC Heartland*, one month after the

---

[8]    Had Ubisoft done so shortly after *TC Heartland* issued, the "course of [these] proceedings might well have been altered[.]" *Micron*, 875 F.3d at 1102. To take just one example, the Court (and the District Court) may have determined that it was advisable to decide Ubisoft's venue motion before the District Court ruled on objections to the motion to dismiss R&R. After all, if Defendants in this case were truly in the wrong venue, it might have made sense to allow the District Court Judge in the proper venue to make a final determination on which claims, if any, would ultimately go forward against Ubisoft (and against Ubisoft Entertainment, SA, assuming it too would have sought a transfer of venue).

District Court's rulings on the R&Rs, and one month after the parties submitted a proposed revised Scheduling Order to the Court.[9] Circumstances like these have caused other courts to find forfeiture of a defendant's venue objection. *See Keranos, LLC*, (D.I. 383 at 4) (holding that the defendants waived their objection to venue by failing to raise it for nearly nine months after *TC Heartland* while they "waited until this court considered and ultimately granted [the plaintiff's] motion to amend"); *Rivera v. Remington Designs, LLC*, Case No. LA CV16-04676 JAK (SSx), (D.I. 193 at 6) (C.D. Cal. June 19, 2018) (holding that the defendants forfeited their right to object to venue where they brought their venue motion seven months after *TC Heartland* and where, in the interim, they filed a notice of supplemental authority in support of then-pending motions for summary judgment and their claim construction briefing that was silent as to any venue objection, and filed new motions for summary judgment); *cf. Chamberlain Grp., Inc. v. Techtronic Indus. Co., Ltd.*, — F. Supp. 3d —, 2018 WL 2332461, at *21 (N.D. Ill. May 23, 2018) (finding waiver of the defendant's venue defense where defendant waited one month after *TC Heartland* to assert the defense, during which time the parties "continued to burn resources in discovery and pre-trial motion practice [as to a case nearing trial], and the Court expended its own energies mediating these disputes"); *Akeso Health Scis., LLC v. Designs for Health, Inc.*, Case No.: CV16-07749 SJO (PJWx), 2018 WL 2558420, at *3 (C.D. Cal. Jan. 25, 2018) (concluding that the defendant forfeited its right to object to venue where it failed to raise such an objection for nearly seven months after *TC Heartland*, and in that time it "actively litigated the case, including by participating in claim construction proceedings and discovery

---

[9]    In that proposed revised Scheduling Order, filed in December 2017, the parties (including Ubisoft) wrote that they "have previously agreed to resume activity in this case upon the issuance of the Court's Claim Construction Ruling[.]" (D.I. 140 at 1)

18

matters"); *Intellectual Ventures II LLC v. FedEx Corp.*, CIVIL ACTION NO. 2:16-CV-00980-JRG, 2017 WL 5630023, at *3-4 (E.D. Tex. Nov. 22, 2017) (concluding that the defendants waived their venue objection based on their own conduct in continuing to actively litigate the case for months after *TC Heartland*, including by seeking favorable constructions of the asserted patents, as "*Micron* does not invite defendants who have substantially engaged in a case to reassert an abandoned defense once it becomes convenient or advantageous for them").[10]

### C. Additional Relevant Factors to the Forfeiture Analysis

In reaching its decision that Ubisoft has forfeited a defense of improper venue, the Court has also been significantly impacted by consideration of additional factors that "implicate efficiency or other interests of the judicial system and of other participants in the case." *Micron*, 875 F.3d at 1101-02. The *Ubisoft* Action has been pending in this Court for over five years. The Court and the District Court have expended significant time and energy in becoming familiar with various issues in the case—a case involving some fairly complex video game-related technology. Relatedly, the Court and the District Court have issued numerous decisions on a vast array of case-related disputes. (*See, e.g.*, D.I. 12; D.I. 36; D.I. 43; D.I. 52; D.I. 59; D.I. 121;

---

[10]     Ubisoft cites to *Javelin Pharms., Inc. v. Mylan Labs. Ltd.*, C.A. No. 16-224-LPS, 2017 WL 5953296 (D. Del. Dec. 1, 2017), in support of its position that its venue objection was timely, noting that the *Javelin* Court found "no forfeiture of venue objection due to participation in litigation that included a claim construction ruling[.]" (D.I. 144 at 7) That case, however, is easily distinguishable from the circumstances here. In *Javelin*, the defendant had contended that venue was improper as early as its answer filed in June 2016, which "put Plaintiffs (and the Court) on notice that [the defendant] believed that it should not have to litigate this case in Delaware." 2017 WL 5953296, at *1. Consistent with the pre-*TC Heartland* venue landscape, the defendant then complied with the case scheduling order and rules of procedure in actively participating in the case, including the claim construction process. The defendant then filed a motion to dismiss or transfer due to improper venue based on *TC Heartland* in August 2017, less than three months after the decision had issued. *Id.*

D.I. 123; D.I. 129; D.I. 138; D.I. 139) The mechanics of transfer or re-filing would take time, and if another judge were to pick this case up in a few months, that judge would need to expend resources in order to get up to speed. Thus, dismissal or transfer would inevitably lead to further delay in resolving this matter, and such delay certainly would not promote the just, speedy and inexpensive resolution of this dispute. *See Keranos, LLC,* (D.I. 383 at 4) (explaining that the defendants' delay in raising their motion regarding improper venue "is amplified by the length of time [plaintiff's] cases have been pending—nearly five years. In light of [d]efendants' waiver and the nearly five-year pendency of [plaintiff's] lawsuits in this district, the 'orderly and expeditious disposition' of the cases would be upset by transfer to another district") (citations omitted); *Agri-Labs Holding LLC v. Taplogic, LLC,* — F. Supp. 3d —, 2018 WL 437560, at *4 (N.D. Ind. Jan. 16, 2018) (finding that defendant's motion to dismiss for improper venue was not timely, where it was raised one month after *TC Heartland* but the case had been pending for three years, the motion was filed concurrently with motions for summary judgment, and where "significant judicial resources have already been expended"); *cf. In re Cutsforth, Inc.*, 2017-135, 2017 WL 5907556, at *1-2 (Fed. Cir. Nov. 15, 2017) (vacating district court's order granting defendant's motion to transfer for improper venue and remanding for the court to consider non-Rule 12 bases for waiver of the venue defense that had been raised by plaintiff, such as "'the waste of judicial resources after five years of litigation, and the burden that [would] now be imposed on a district unfamiliar with this case'") (citation omitted).

Also relevant here is the fact that the related *Harmonix* Action is pending in this Court. That case involves the same patent, the same three asserted claims, and identical invalidity contentions. (D.I. 152 at 9-10) A grant of Ubisoft's motion would require *two* courts to invest

20

significant time and effort in order to resolve the two cases. Litigating two similar cases involving the same patent in two different venues would serve to make the overall judicial system less efficient.

## IV.    CONCLUSION

Faced with all of these considerations—(1) Ubisoft's conduct in waiting eight months to assert its venue objection while actively seeking and obtaining key rulings from this Court; (2) the lengthy time period that this case has been pending; (3) the significant judicial resources this Court has already devoted to this case; and (4) the existence of a related matter in this Court involving many of the same issues—the Court concludes that Ubisoft has forfeited its venue objection. This conclusion is not reached lightly, is not contrary to any other statute or rule, and is intended to reflect a "'reasonable response to the problems and needs confronting the court[.]'" *Micron*, 875 F.3d at 1100 (quoting *Dietz*, 136 S. Ct. at 1892); *see also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."). For the foregoing reasons, the Court recommends that the Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

21

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: June 25, 2018

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE