IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-335-LPS-CJB |
| ) | |
| UBISOFT ENTERTAINMENT SA and ) | |
| UBISOFT, INC., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Presently before the Court in this patent infringement action is Plaintiff Princeton Digital Image Corp.'s ("Plaintiff" or "PDI") "Motion for Partial Summary Judgment that Damages are Not Limited by the Patent-Marking Statute[,]" filed pursuant to Federal Rule of Civil Procedure 56 ("the Motion"). (D.I. 235) Defendant Ubisoft, Inc. ("Ubisoft" or "Defendant") opposes the Motion. For the reasons that follow, the Court recommends that PDI's Motion be DENIED.

## I. BACKGROUND[1]

PDI filed the instant case on February 27, 2013. (D.I. 1) On July 17, 2013, Chief Judge Leonard P. Stark referred this case to the Court to hear and resolve all pre-trial matters, up to and including the resolution of case-dispositive motions. (D.I. 10)

Briefing on the instant Motion was completed on October 26, 2018. (D.I. 318) A 5-day trial is set to begin on April 8, 2019. (D.I. 141; *see also* D.I. 15 at 11)

## II. DISCUSSION

### A. Legal Standard

---

[1] The relevant factual background will be set out below in the Discussion section.

In determining the appropriateness of summary judgment, the Court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party' but not weighing the evidence or making credibility determinations." *Hill v. City of Scranton*, 411 F.3d 118, 124-25 (3d Cir. 2005) (alternations in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. Analysis

By its Motion, PDIC moves for partial summary judgment that its damages for patent infringement in this case are not limited by the marking statute, 35 U.S.C. § 287(a) ("Section 287(a)" or "the marking statute"). The marking statute provides that:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).[2]

The parties' primary dispute regarding the Motion is a legal dispute. PDI asserts that to trigger the requirements of the marking statute, a patented article must be "manufactured, offered for sale, sold, *and actually shipped to customers*." (D.I. 241 at 6 (emphasis in original); *see also, e.g.*, D.I. 318 at 3 (PDI claiming that "marking compliance is not required until a patent owner or the owner's licensee begins to ship commercial products to customers")) From that legal premise, PDI asserts that because none of the systems identified by Ubisoft as the basis for Ubisoft's marking defense were actually *shipped to customers*, then as a matter of law, the marking statute's limitation on damages could not have been triggered. (D.I. 241 at 1-2; D.I. 318 at 9) Ubisoft, on the other hand, asserts that if a patented article: (1) is made, sold or offered for sale; and (2) "enter[s] the public domain"—whether by shipping *or by some other means*—then the marking requirement is triggered. (D.I. 280 at 1) Here, Ubisoft contends that PDI's predecessor, Fakespace, Inc. ("Fakespace") manufactured and then publicly displayed the patented system and also made numerous offers to sell that publicly-displayed system, thereby implicating the marking requirements of Section 287(a). (*Id.*)[3]

For the following three reasons, the Court concludes that PDI's position fails.

---

[2] The patentee bears the burden of pleading and proving that he complied with Section 287's marking requirement. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). Compliance with the marking statute is a question of fact. *Id.*

[3] PDI further disputes whether the relevant system is a "patented article" under the meaning of the marking statute, although it has not moved for summary judgment on that basis. (D.I. 318 at 7) Instead, by its Motion, PDI argues that even assuming the relevant system is a patented article, the marking statute was not triggered here for the separate reason that its predecessor's activities did not suffice to require the system at issue to be marked.

First, the plain language of the marking statute is not as restrictive as PDI's position suggests. The statute provides that a patented article that is "ma[de]" *or* "offer[ed] for sale" *or* "s[old]" (in such a way that the article is released into the "public" domain)[4] must be marked in order for the patentee to collect damages for the period prior to the provision of actual notice of infringement to the infringer. The statute thus sets out alternate ways in which its requirements can apply. It does not state that a patented article must be made *and* offered for sale *and* sold for the marking requirement to trigger. Nor does it state that if an article is made and/or offered for sale and/or sold, the article must *also* necessarily be *shipped to the customer* in order to trigger the marking requirement. *See WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 641 (E.D. Va. 2010) (rejecting the patentee's assertion that "only distribution of a product triggers the requirement of the marking statute" because, *inter alia*, "the plain language of the statute requires marking when a product is made, sold, offered for sale, or imported" and "does not limit the marking requirement to products that are distributed"). As Ubisoft points out, there are "many other ways" besides shipping to make a patented article public, such as "public displays and public offers to sell." (D.I. 280 at 1)

---

[4] It seems clear that the requirements of the marking statute are triggered only with respect to a patented article that actually entered the public domain—i.e., an article as to which the patentee can actually "give notice to the public that [such article] is patented[.]" 35 U.S.C. § 287(a). For example, if a patented article is manufactured, but is never released in any way into the public domain, it would not make sense that the patentee would be required to mark such an item (as if no member of the public ever saw the item, marking would serve no purpose). *See, e.g., CoreLogic Info. Sols., Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-RSP, 2012 WL 4635994, at *2 (E.D. Tex. Sept. 29, 2012) (denying the defendant's motion for summary judgment regarding marking, on the ground that the movant had not established that the patentee had a duty to mark, where the only patented article made by the patentee was "kept secret" and never "enter[ed] the public domain").

4

Second, the Court's reading of Section 287(a) in this regard seems in line with the statute's underlying purposes. To that end, the United States Court of Appeals for the Federal Circuit has explained that the marking statute serves three related purposes: "(1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). If a patentee makes a patented product and that product enters the public domain via public displays and/or public offers for sale, then marking that product would help to avoid innocent infringement and would assist the public in identifying that such product is patented—even in a circumstance where the product has not been actually shipped to a customer. In other words, if a patentee is publicly displaying/offering for sale a patented article that it has not marked, a member of the public who sees the product may believe that she could produce a copy of that article without committing patent infringement. Such an outcome would be contrary to the goals of the marking statute.[5]

Third, the caselaw that PDI most substantially relies on in support of its position is distinguishable. The main Federal Circuit case cited by PDI is *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993). In that case, the asserted patent had issued on July 1, 1986, and prior to that date, the patentee had shipped over 8,000 unmarked patented products. *Am. Med. Sys., Inc.*, 6 F.3d at 1534. The patentee then began marking its products two months after

---

[5] From a patent law perspective, the public may freely copy a product in the public domain that is not patented. *See, e.g., Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 441 (2001) (noting that "copying of the functional features of a unpatented product is lawful"); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.").

the patent issued, and began shipping those marked products a month and a half later, in October 1986. *Id.* The patentee filed a patent infringement lawsuit approximately one year later, in October 1987. *Id.* at 1529. The district court limited the plaintiff's recoverable damages to those incurred after the filing date of the lawsuit for failure to mark under Section 287(a). *Id.* at 1526, 1534. On appeal to the Federal Circuit, the patentee argued that it was entitled to damages from the time that it began to mark its products. *Id.* at 1535. While the Federal Circuit did not agree with that precise premise, it did hold that the patentee was entitled to damages from the time that it began shipping its marked products. *Id.* at 1537. In doing so, the *American Medical* Court explained that the date that the patentee began marking its product was irrelevant. *Id.* at 1537-38. Noting that the purpose of the marking statute is to "place the world on notice of the existence of the patent[,]" the Federal Circuit explained that the world was not put on notice during the period when the patentee had begun to mark its product but was still contemporaneously shipping unmarked products, "which continued to mislead the public into thinking that the product was freely available." *Id.* at 1538 (internal quotation marks and citation omitted). It was only by marking the products *and distributing* those marked products that the patentee put the public on notice that these were patented articles. *Id.*

    Here, the present situation is clearly different. In *American Medical*, the issue before the Court was which act constituted full compliance with the marking statute where: (1) unmarked products were first injected into the public domain; (2) the patentee then started to mark its products; and (3) the patentee later began to ship those marked products, all before filing suit. Importantly, the Federal Circuit never stated that the shipping of those marked products would be the *only way* for the patentee to ever come into compliance with the marking statute; it was

just that in that fact-specific scenario, shipping was the act that first inserted the marked products into the public domain, thus triggering compliance with Section 287(a).[6] Here, we have a scenario where, according to Ubisoft, while PDI may not have shipped anything to customers, it otherwise placed a patented system that it had made, used, and offered for sale into the public domain, which gave rise to a marking requirement that it did not satisfy. (D.I. 280 at 1, 8)

Having addressed the legal issue at the crux of PDI's Motion, resolution of the remainder of the Motion is fairly straightforward. With regard to whether the prior patentee of the asserted patent, Fakespace, engaged in acts sufficient to trigger the requirements of the marking statute, Ubisoft points to, *inter alia*, the following, (D.I. 280 at 3-9):

- Evidence that Fakespace made a music-driven virtual reality system that, while not marked, was publicly exhibited at a SIGGRAPH '96 computer-graphics industry conference in New Orleans, Louisiana in August 1996. (*See* D.I. 283, ex. 3 at 140-42, 146, 156-59, 185-86; *id.*, ex. 4; D.I. 241 at 3 at ¶ 4);

---

[6] Similarly, PDI relies on *Wokas v. Dresser Indus., Inc.*, 978 F. Supp. 839 (N.D. Ind. 1997) in support of its position that a patent holder's "obligation to mark arises only when it begins 'shipping' products." (D.I. 318 at 4; *see also* D.I. 241 at 6) In *Wokas*, the defendant asserted that it could only be liable for damages after the date on which it was served with the complaint because the licensee of the patent ("Tokheim") had failed to mark the patented products that it manufactured and sold. *Wokas*, 978 F. Supp. at 842. Tokheim became a licensee of the asserted patent on June 7, 1996, and the defendant was served with the complaint on July 30, 1996. *Id.* During that intervening time period, Tokheim sold unmarked products, but it was not clear when such products were shipped to customers or installed for public use. *Id.* The *Wokas* Court framed the issue as whether the duty to mark began when Tokheim manufactured those products, or whether the products had to be injected into the marketplace in order to trigger the duty to mark. *Id.* at 843. It held that notice to the public occurred when the products were shipped, citing to *American Medical* in support. *Id.* at 843-44. Significantly, the *Wokas* Court was focused on what act at issue in the case sufficiently put the public on notice about the patented product, and there was no evidence that the products were somehow in the public domain prior to being shipped. Again, we have a different factual scenario here than that at issue in *Wokas*—Ubisoft points to evidence (to be discussed below) that the patentee made, used, and offered for sale a patented system in a manner that was visible to the public.

- Evidence that Fakespace made a music-driven virtual reality system that, while not marked, was publicly exhibited at the Experience Music Project ("EMP") in Seattle, Washington at the Pacific Science Center from December 1996 through January 1997. (*See* D.I. 241 at 3 at ¶ 4; D.I. 244, ex. 11 at Appx. 144; D.I. 283, ex. 3 at 140-45, 191-93; D.I. 283, ex. 6 at 150) EMP paid Fakespace to make and exhibit the system, and paid additional money to Fakespace to extend the duration of the exhibition. (D.I. 244, ex. 11 at Appx. 144-45; D.I. 283, ex. 3 at 194; D.I. 283, ex. 5 at 107-08); and

- Evidence that, concurrent with the public demonstrations of the music-driven virtual reality system at EMP, Fakespace received inquiries relating to such a system. Fakespace responded that its systems were "priced for purchase" at particular prices and that such a system was then on display at EMP (and included links to websites providing more information about the system). (*See, e.g.*, D.I. 283, ex. 3 at 201-10; *id.*, exs. 7, 9, 10)

In light of this evidence, there are clearly disputes of fact as to whether Fakespace engaged in sufficient acts that injected a patented article into the marketplace and triggered the requirements of the marking statute.

## III. CONCLUSION

For the foregoing reasons, the Court recommends that PDI's Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such redacted version shall be submitted no later than **November 13, 2018,** for review by the Court, along with a motion for redaction that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated: November 7, 2018

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE