IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORPORATION, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-335-LPS-CJB |
| UBISOFT ENTERTAINMENT SA and UBISOFT, INC., | : |
| Defendants. | : |

## MEMORANDUM ORDER

At Wilmington this **3rd** day of **September, 2021**:

Having reviewed the parties' briefing and other materials (*see, e.g.*, D.I. 393, 394, 396, 398) related to the motion for attorneys' fees and expenses pursuant to 35 U.S.C. § 285 filed by Defendants Ubisoft Entertainment SA and Ubisoft, Inc. ("Ubisoft"), **IT IS HEREBY ORDERED** that Ubisoft's motion (D.I. 392) is **GRANTED IN PART** and **DENIED IN PART**, for the reasons and as explained below.

## BACKGROUND

Plaintiff Princeton Digital Image Corporation ("PDIC") sued Ubisoft, accusing certain of Ubisoft's video games of infringing U.S. Patent No. 5,513,129 (the "'129 patent"). (D.I. 1) The '129 patent relates generally to virtual reality computer systems controlled by music or control tracks created from music. ('129 patent at 1:8-18; *see also* D.I. 72 ¶ 10) Early in the suit, Ubisoft expressed concern to PDIC that its infringement theory mistakenly relied on the notion that "the background lighting and effects [in the accused games] are produced or controlled by a music file." (D.I. 45-1 at 27-29) Ubisoft clarified that the accused games are,

1

instead, developed by "manually synchronizing the avatar video, soundtrack, and background lighting and effects on a timeline," and that "[n]either the avatar nor the background effects are generated, produced, or controlled by a music file or control signal," as required by the '129 claims.[1] (*Id.* at 29)

In April 2014, Ubisoft filed a petition for *inter partes* review ("IPR"), arguing that certain claims of the '129 patent should be rejected in view of U.S. Patent No. 5,430,835 ("Williams"). (D.I. 89 Ex. 4 at 47-69) In response, PDIC distinguished Williams, arguing that "the control information in Williams corresponds to time, position or location, not to an audio signal as required by the claims. That is, once the timer starts, the graphics are displayed irrespective of the audio content." (*Id.* at 124-25) While the IPR was instituted on other grounds, the PTAB denied institution on the basis of Williams, instead agreeing with PDIC that Williams fell outside the scope of the challenged claims because it "determines the locations in a sound recording where predetermined actions are to be displayed and then associates actions with the time positions or locations, rather than based on the content of the sound recording itself." (*Id.* at 170-71) Ultimately, the PTAB cancelled all but dependent claims 14, 19, and 20. (D.I. 67 at 3, 7)

The parties then engaged in claim construction before Magistrate Judge Burke of this Court. One of the disputed terms was "means for prerecording a control track having music

---

[1] PDIC argues that, since Ubisoft does not contend that any pre-claim construction conduct should result in a fee award, this letter, which was submitted before Ubisoft even filed its IPR petition, is irrelevant. (D.I. 396 at 2-3) The Court disagrees. When considering whether a case is "exceptional" under Section 285, the Court must consider the totality of the circumstances. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). This letter reveals at least some early understanding on PDIC's part as to how the accused products worked and further shows PDIC being on notice of Ubisoft's view that the case lacked merit. It is relevant to the Court's determination of the substantive strength of PDIC's litigating position and the reasonableness of PDIC's litigation conduct.

2

and/or control information corresponding to a music signal" found in claim 16, from which claims 19 and 20 depend. (*See, e.g.*, D.I. 98 at 25-28) Ubisoft argued that PDIC's statements during the IPR distinguishing Williams amounted to a disclaimer of control information corresponding to time, position, or locations in a sound recording. (*See id.*) Judge Burke agreed. In his June 16, 2017 Report and Recommendation ("R&R"), he noted:

> [I]t is clear that before the PTAB, PDIC argued that the claim limitation . . . required that control information must correspond not to time, position, or locations in a sound recording, but simply to the audio signal itself. Here, in contrast, it argues that the claim term should not be limited to a structure that generates a control track based on the content of a sound recording itself, and instead could amount to a structure that generates a control track based merely on time, positions or locations within a sound recording. Plaintiff should be bound by its earlier interpretation of this claim limitation.

(D.I. 129 at 33)

The undersigned Judge conducted a *de novo* review, agreed with Judge Burke and, over PDIC's objection, adopted this portion of the R&R on December 13, 2017. (D.I. 139 at 12) In doing so, the Court was clear about the scope of the disclaimer, stating that "***the claimed invention*** does not cover situations in which 'the control information . . . corresponds to time, position or location, not to an audio signal as required by the claims' – i.e., where 'once the timer starts, the graphics are displayed irrespective of the audio content.'" (*Id.*) (emphasis added) (quoting D.I. 89 Ex. 4 at 124-25)

The parties then engaged in fact and expert discovery. PDIC's expert, Mr. Andrews, offered an infringement opinion which, in Ubisoft's view, was improperly based on the accused games' synchronization of graphics with music on a timeline, which fell squarely within the disclaimer. (D.I. 393 at 8) (citing D.I. 236 at 4-10) After warning PDIC that its infringement theory was "contrary to the claim scope that the R&R determined that PDIC disclaimed" (D.I.

3

394 Ex. A at 6), Ubisoft filed for summary judgment of non-infringement based on the disclaimer. During proceedings on that motion, PDIC argued that the IPR disclaimer did *not* preclude its infringement theory, asserting that the accused games' synchronization of graphics to the beat of the music was "based on the content of a sound recording itself, and not based merely on time, positions or locations within a sound recording." (D.I. 366 at 15)

Judge Burke found this argument "unavailing" and recommended granting Ubisoft's motion. (*Id.* at 18, 20-21) He explained that, in the accused games, it was undisputed that "elements are positioned to be displayed . . . in relation to markers or beat maps manually created by a human – not in relation to music itself," and found that this was exactly what PDIC had disclaimed. (*Id.* at 17-18) (emphasis omitted) He noted further that, during claim construction, "PDIC seemed to understand that the undisputed implementation of the [a]ccused [g]ames would fall within the scope of the disclaimer," but that PDIC had now "switched course," arguing such implementation falls *outside* the scope of the disclaimer. (*Id.* at 18-19) As Judge Burke concluded: "PDIC was right the first time." (*Id.* at 19)

On *de novo* review, the undersigned Judge adopted Judge Burke's recommendation. (D.I. 378 at 80-84) The Court rejected PDIC's argument that the disclaimer had somehow been broadened from what the Court had defined it to be during claim construction, stating plainly: "Judge Burke did not broaden th[e] disclaimer. He did not modify th[e] disclaimer. He did not change the Court's claim construction." (*Id.* at 81-82)

The Court entered final judgment against PDIC on October 25, 2019. (*See* D.I. 382) On appeal, PDIC argued that in granting summary judgment the Court had failed to apply its claim construction and instead, and incorrectly, extended the disclaimer. (*See generally* D.I. 396 Ex. 2)

4

The Federal Circuit affirmed without opinion pursuant to Federal Circuit Rule 36 (*see* D.I. 385) and subsequently denied PDIC's request for panel rehearing (*see* D.I. 386).

Ubisoft now seeks attorneys' fees and expenses on the basis that this case is exceptional, within the meaning of Section 285, due to PDIC's weak litigation positions and unreasonable litigation tactics. (*See* D.I. 393 at 11-16) Specifically, Ubisoft seeks to recover: (i) attorneys' fees for litigating the district court case from the date of the issuance of the claim construction order (December 13, 2017) through the entry of final judgment (October 25, 2019); (ii) attorneys' fees for litigating PDIC's unsuccessful appeal; and (iii) other expenses, including those fees paid to experts, incurred following issuance of the claim construction order. The Court is granting the first of these requests and denying the second and third.

## LEGAL STANDARDS

In "exceptional" patent cases, a court may award "reasonable attorney fees" to the "prevailing party." 35 U.S.C. § 285. The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. A party moving for attorneys' fees must demonstrate, by a preponderance of the evidence, that a case is "exceptional." *Id.* at 557-58. Ultimately, a court must make a discretionary decision based on the totality of the circumstances. *See id.* at 554.

## DISCUSSION

There is no dispute that Ubisoft is the prevailing party. The Court granted Ubisoft's motion for summary judgment and entered final judgment in favor of Ubisoft and against PDIC. (D.I. 382) That judgment was affirmed on appeal. (D.I. 385)

5

Ubisoft's arguments for finding this case to be "exceptional" fall into two primary categories. First, Ubisoft contends that PDIC's litigation positions were substantively weak and contrary to this Court's claim construction. (*See* D.I. 393 at 11-13) Second, PDIC allegedly advanced baseless arguments on multiple occasions, prolonging the litigation in bad faith. (*See id.* at 14-16) Viewing the record in its totality, the Court finds by a preponderance of the evidence that this case is exceptional within the meaning of Section 285, and that an award of Ubisoft's reasonable attorneys' fees – for the period following the issuance of the claim construction order through the conclusion of the district court litigation – is appropriate, for purposes of compensation and deterrence.

While PDIC's infringement claims were not objectively unreasonable at the outset of this litigation, the Court agrees with Ubisoft that PDIC's suit became baseless after the Court, in its claim construction order, applied PDIC's disclaimer to the asserted claims of the '129 patent. At that stage, and as the Court ultimately concluded at summary judgment, no reasonable factfinder could conclude that Ubisoft's accused games infringed; instead, any reasonable factfinder would have to conclude that the accused games came within the scope of PDIC's disclaimer. *See AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1360-61 (Fed. Cir. 2017). The Federal Circuit has "frequently held that a case is exceptional when a party continues to litigate claims that have become baseless in view of a district court's claim construction opinion." *Innovation Scis., LLC v. Amazon.com, Inc.*, 842 F. App'x 555, 557 (Fed. Cir. 2021) (citing *AdjustaCam*, 861 F.3d at 1360).

PDIC asserts that it acted reasonably in simply following the Court's claim construction order and arguing the disclaimer did not encompass Ubisoft's products. (D.I. 396 at 10-11) PDIC claims "it was reasonable . . . to proceed on the assumption that it could show infringement

6

by demonstrating a direct correspondence between the terms of the *Markman* [o]rder and Ubisoft's products." (*Id.* at 11) But PDIC's generic recitation of the elements of a patent infringement analysis is untethered from the facts of this case. The Court's order adopting the R&R made clear that "the claimed invention does not cover situations in which the control information . . . corresponds to time, position or location, not to an audio signal as required by the claims."[2] (D.I. 139 at 12) (internal quotation marks omitted) The Court further clarified that the "prerecorded control track" must be "based on the content of a sound recording itself." (*Id.*)

At the summary judgment stage, Judge Burke noted it was undisputed how the accused games worked, explaining that "a human listens to a song and presses a button on a keyboard in time with the beat of a music – all in order to create markers or beat maps that are used to specify when certain elements will be displayed in the games." (D.I. 366 at 16) While this finding was made after the parties had engaged in fact and expert discovery, there is no indication that PDIC had a different understanding of how the accused products worked at the claim construction

---

[2] Based on its addition of emphasis to the word "merely" at various points throughout its brief, the Court understands PDIC to be reiterating the argument it pressed at the summary judgment stage that the word "merely" "does a lot of work" in the Court's claim construction. (*See, e.g.*, D.I. 378 at 12, 23, 29) But the Court notes, as it has before, that Judge Burke did not consistently use the word "merely" in characterizing the disclaimer; nor did this Court in describing the disclaimer. (*See id.* at 83)

PDIC also relies heavily on its insistence that the claim construction order found the disclaimer applied only to claim 16 of the '129 patent, making it reasonable for PDIC to proceed thereafter on the view that there was no disclaimer for the other two asserted claims. (*See, e.g.*, D.I. 396 at 12-14) The Court has already rejected this position (*see* D.I. 378 at 81-82), and does so again. The R&R's express discussion of the disclaimer is limited to the context of claim 16 because that is where (and only where) the parties' dispute arose during that stage of the case. In adopting Judge Burke's recommendation, the undersigned Judge clearly described the disclaimer in connection with its description of the entire "claimed invention." (D.I. 139 at 12) PDIC's expert later testified that the "prerecorded control track" in claim 12, from which claim 14 depends, is subject to the same disclaimer applicable to claim 16. (*See* D.I. 245-1 Ex. 9 at 318-19; D.I. 236 at 6-7) Further, at the summary judgment stage, PDIC conceded that it would not "be disputing that [the disclaimer] applies across the claims." (D.I. 361 at 99-100)

7

stage. By the time of the claim construction hearing, Ubisoft had sent at least two letters to PDIC clarifying that the accused games synchronize graphics to the beat of music along a timeline, as well as documents and game manuals evidencing this fact. (*See, e.g.*, D.I. 45-1 at 27-29, 31-33) In other words, PDIC knew or should have known that, in the accused games, "once the timer starts, the graphics are displayed irrespective of the audio content" – functionality that this Court had clearly explained in its claim construction order was disclaimed. (D.I. 139 at 12) In the Court's view, any reasonable litigant in PDIC's position would have known that the Court's claim construction foreclosed any reasonable argument that the accused games fell outside the disclaimer and infringed the '129 patent.

PDIC's contention that this Court granted summary judgment not by applying its prior claim construction but instead based on a disclaimer theory "independent of" that construction is entirely incorrect. (*See, e.g.*, D.I. 396 at 13-15; *see also* D.I. 398 at 5 (Ubisoft: "PDIC's argument that the disclaimer was 'independent of any claim construction' is patently nonsensical – the disclaimer was defined and found to limit the claim scope at claim construction, they are one in the same.") (internal citation omitted)) At the claim construction stage, the Court defined the disclaimer, and accordingly, the scope of the asserted claims. At the summary judgment stage, the Court determined that the accused games did not fall within the claim scope as defined in the claim construction order, due to the disclaimer. These conclusions were not only interrelated; the later summary judgment conclusion followed inexorably from the earlier claim construction order, given the undisputed nature of how the accused games operate. Thus, after the Court's issuance of its claim construction order (*see* D.I. 139 at 12), it was objectively unreasonable for PDIC to continue litigating the question of whether Ubisoft's products infringed or whether they, instead, came within the scope of the disclaimer.

8

Turning to Ubisoft's second basis for exceptionality, Ubisoft argues that PDIC employed unreasonable litigation tactics by "charg[ing] forward with its meritless infringement claim" after a dispositive claim construction ruling, prolonging the litigation in bad faith. (D.I. 393 at 14) Ubisoft notes that, after the Court issued its claim construction order, PDIC failed to take action to end the litigation or adjust its litigation strategy. (*Id.* at 14-15) (noting PDIC could have filed immediate appeal or abandoned its claims after claim construction) Instead, PDIC prolonged the litigation, along the way causing Ubisoft to have to litigate several motions (*see* D.I. 235, 252, 256), contend with claims related to already-dismissed indirect infringement allegations (*see* D.I. 199 at 4-6), and respond to unreliable damages opinions (*see* D.I. 341).

The Court agrees with Ubisoft that PDIC's pursuit of a baseless infringement claim prolonged this litigation unreasonably and caused Ubisoft to incur needless litigation expenses. This conduct contributes to the Court's finding that this is an exceptional case. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction."). Further, unlike in *Quest Licensing Corp. v. Bloomberg L.P.*, which PDIC compares to this case (*see* D.I. 396 at 15), there is an absence of "countervailing factors" that would compel a different conclusion. 2019 WL 1376035, at *3 (D. Del. Mar. 27, 2019) (noting, for example, that Judge Sleet, who handled nearly entire case, stated at summary judgment that plaintiff had "made a fine argument," adding that plaintiff appeared to have continually assessed soundness of its infringement contentions).

For all of the foregoing reasons, the Court grants the first component of PDIC's motion: it will require PDIC to pay all of Ubisoft's reasonable attorneys' fees incurred in this action from the date of the Court's claim construction order (December 13, 2017) through the entry of final

judgment (October 25, 2019). The Court's fee award reflects the unnecessary effort Ubisoft had to expend to continue defending claims that became baseless after claim construction. *See Intell. Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019) ("[C]ourts frequently award attorney fees under § 285 in an amount related to particular conduct and circumstances that stood out and made a case exceptional, even when the entirety of the conduct in the case was not exceptional from start to finish."). The Court's decision does not signify, however, that the case was only exceptional from that point forward. *See id.* (requiring courts awarding even partial attorneys' fees to find that case ***overall*** is exceptional). Rather, the Court finds that PDIC's continued pursuit of its infringement theory despite its substantive weakness post-claim construction, when considered as part of the totality of the circumstances, renders the entire case exceptional. *See, e.g., Prolitec Inc. v. ScentAir Techs. Inc.*, 2021 WL 270675, at *3 (E.D. Wis. Jan. 27, 2021) (finding entire case exceptional but awarding fees incurred only in bringing motions necessary to close case).

The Court is denying the other components of Ubisoft's requested relief. While the Court recognizes it may allow Ubisoft to recover the additional attorneys' fees it incurred in defending against PDIC's unsuccessful appeal to the Federal Circuit, *see, e.g., Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 517 (Fed. Cir. 2014), the Court discerns no meritorious basis for doing so here. There was nothing unreasonable about PDIC's exercise of its appellate rights; it was entitled to ask the Court of Appeals to review this Court's judgment. As PDIC accurately writes, "Ubisoft has not argued, much less demonstrated, that PDIC's appeal briefs were unreasonable or were filed in bad faith." (D.I. 396 at 2; *see also id.* at 8) Ubisoft has not pointed to any aspect of PDIC's appeal that constituted either an objectively unreasonable litigating position or unreasonable manner of litigating. The Court discerns no basis to find that

10

the interests of deterrence or compensation warrant granting the portion of Ubisoft's motion relating to the appeal.[3]

The Court is likewise denying Ubisoft's request to recover expenses beyond attorneys' fees, including the expert fees it had to pay in the period after the Court's claim construction order. (*See, e.g.*, D.I. 398 at 9) ("In addition to its reasonable attorneys' fees, Ubisoft also should be awarded the expenses it was forced to incur in order to defend against PDIC's meritless infringement claim.") Assuming, arguendo, that Section 285 permits the recovery of such expenditures,[4] the Court is not persuaded it is appropriate under the totality of the circumstances presented here. To the extent Ubisoft is appealing to the Court's inherent authority (*see, e.g.*, D.I. 393 at 17) (citing *Takeda*, 549 F.3d at 1391 (stating courts "may invoke [their] inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute")), the Court will not exercise such authority here, where the Court has not found "inappropriate [or] . . . egregious conduct," fraud, or abuse, *Amsted*, 23 F.3d at 379.

Accordingly, **IT IS FURTHER ORDERED** that:

---

[3] The Federal Circuit's Rule 36 summary affirmance and this Court's grant of summary judgment do not, by themselves – individually or together – make this case exceptional for purposes of Section 285. *See, e.g., Honeywell Int'l Inc. v. Fujifilm Corp.*, 708 F. App'x 682, 684 (Fed. Cir. 2018) ("[L]osing a summary judgment motion should not automatically result in a finding of exceptional conduct."); *Quest Licensing*, 2019 WL 1376035, at *2 n.2 (explaining that, since "the Federal Circuit regularly resolves appeals without opinions, for a variety of reasons," its affirmance by Rule 36 order did not "make this case exceptional or even contribute much to the analysis"). The Court has taken these dispositions into account as part of the totality of the circumstances.

[4] *See Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, 2016 WL 3436396, at *5 (D. Del. June 15, 2016) ("[T]he award of expenses is also properly within the scope of § 285."); *see also Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008); *but see Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed. Cir. 1994) ("Section 285 . . . provides only for 'reasonable attorney fees,' . . . exclusive of expert witness fees.").

1. PDIC shall pay the reasonable attorneys' fees incurred by Ubisoft in litigating this case in this Court between December 13, 2017 and October 25, 2019.

2. Other than as expressly set out in paragraph 1 immediately above, Ubisoft's motion to recover fees and expenses is denied.

3. No later than September 10, 2021, Ubisoft shall provide PDIC with all reasonable and necessary documentation to support the amount of fees it seeks to recover consistent with this order. PDIC shall advise the Court, by way of submission of a letter brief not to exceed five pages filed no later than September 17, 2021, of any objection to paying the amount to be disclosed by Ubisoft. Should such an objection be timely filed, Ubisoft shall respond, by submitting a letter brief not to exceed five pages, no later than September 24, 2021. The Court will hear argument on any objections by teleconference on September 27, 2021 at 5:00 p.m. The parties and any interested member of the public can access the teleconference by dialing 877-336-1829 and using the access code 1408971.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE